The State of Ohio, Appellee, *v.* Williams, Appellant.

[Cite as State v. Williams (1976), 47 Ohio App. 2d 330 ]

(No. 13-75-14—Decided January 9, 1976.)

*Mr. Thomas R. Spellerberg*, prosecuting attorney, for appellee.

*Messrs. Marley & Marley*, for appellant.

GUERNSEY, J. Defendant was found guilty in the Court of Common Pleas of Seneca County and sentenced for the crime of murder as set forth in R. C. 2903.02, providing that "No person shall purposely cause the death of another." He appeals assigning error in three particulars.

First Assignment of Error. "That the verdict and judgment of the court are not sustained by sufficient evidence and are against the manifest weight of the evidence."

Second Assignment of Error. "That the verdict and judgment of the court are contrary to law."

These assignments of error will be considered together because, as argued, they involve the same evidence and application of the same principles of law, the argument basically being that the evidence did not show that the defendant *purposely* caused the death of one Henry Terminelli, hereinafter referred to as Henry.

Henry was the three year old male child of one Donita Terminelli, twenty two years of age, hereinafter referred to as Donita. Donita, with Henry and his younger brother, had taken up residence with the defendant in his home in Fostoria, Ohio. The defendant, who is 25 years of age, had broken his shoulder blade and received other injuries in a motorcycle accident on about July 28, 1974, and had either resigned or otherwise terminated his employment. While Donita was engaged in her employment the defendant "baby sat" with the two children and saw to their needs. On September 4, 1974, the day of the principal events herein, Donita left for work at about 3 p. m. leaving the children in the defendant's care. She returned at about 12:30 a. m. on September 5th and was met at the door by the defendant who told her that he had had to correct Henry for "messing his pants." Donita and the de-

fendant then watched a television show to its conclusion before ascending to the second floor where they checked Henry in his bed and noticed that something was wrong with him. The defendant told Donita to leave the room and when he had ascertained that Henry was not breathing told her to go to the neighbors to summon an ambulance. The defendant began administering artificial respiration and continued to do so while Donita drove him and Henry to the hospital after she was unsuccessful in her efforts to rouse the neighbors. Upon arrival at the hospital Henry was taken immediately to the emergency room where two nurses, two doctors and a policeman worked for at least an hour trying to revive him, giving up at about 3 a. m. All of these persons observed multiple bruises and abrasions on Henry's body. At about 11 a. m. on September 5th a pathologist conducted an autopsy and observed the same bruises as well as a large bruise on the left side of Henry's head. He determined that death resulted from compression of the brain caused by a subdural hematoma which in turn was caused by a broadly placed zone of bruising or trauma consistent with banging ones head against a sink or tub.

The defendant made a written statement at 4 a. m. on September 5th that Henry had fallen down a stairway (a fabrication which he and the mother testified they had agreed to on the way to the hospital). He made another written statement at 12:30 p. m. on September 5th, which acknowledged no responsibility and gave no explanation of any sort relating to the cause of death. At 3:41 p. m. on September 6, 1974, defendant made a final written statement reading in its entirety:

"I, James A. Williams on the night of Sept. 4. took care of the child Henery. At about 10.00 p. m. I told Henery to get his cloth's off to take a bath. But before he was to take a bath he had to go up stairs and get the under pants that he had messed earlier in the evening while taking a nap. When he returned with the pants my first reaction was to hit him on the butt, but when I did he lot his balance and fell against the sink. Then he precieded to take

his bath. I then returned latter and took him out of the tub and helped him dry off. Then on the way to the bed I struck him in various places of his back side about every fourth or fifth step. Then upon entering the bedroom I grabbed him by the arm and started shaking him and asking him why he shit the bed. I also gave him a bad spanking with about eight hits on the rear section. At the time I put him to bed he seemed to be breathing with a little difaculity so I put some viks on him." (Misspellings are as in the statement.)

Defendant's oral testimony as to the critical events was substantially the same as his last written statement. Donita was called as a prosecution witness and testified that when defendant met her at the door on her return from work he told her that he had punished Henry "not like he did before"; that he had punished Henry in her presence on other occasions and had left bruises on him; that when she looked in on Henry she saw that his lips and gums were all blue; that she asked the defendant what he had done and "he said he back handed him in the mouth."

Photographs were taken and submitted in evidence both immediately after the fact of death had been determined and within a few hours after the autopsy. These photographs depicted in visual form the appearance and location of the bruises on the child although the "broad zone of rather bright red hemmorrhage" testified to by the pathologist as "overlying almost the upper half of the skull on the left" was obscured by the child's dark hair.

There was thus no admission by the defendant that he "purposely caused the death of another" and no direct evidence of such purpose. Such purpose, if it existed, had to be derived from circumstantial evidence. It was also apparent from the medical testimony that each single blow which Henry had received on his head and body, as evidenced by the bruises and abrasions thereon and other than the blunt blow to the left side of his head which caused the subdural hematoma, either in and of itself or when considered together with other blows apparently received concurrently, would not have been sufficient to cause Hen-

ry's death. In the absence of direct evidence of purpose such blows would not, therefore, have been sufficient to prove that the defendant purposely killed the child.

We come then to a consideration of the blunt blow to the left side of the head. There was no direct evidence that such a blow had occurred other than the defendant's written statement and oral testimony that Henry had hit his head on the bathroom sink. However, independently of such evidence the jury could properly infer from the fact of the subdural hematoma and the fact of the exterior bruise or hemorrhage on the left side of Henry's head that, in fact, he had received a blunt blow to the left side of his head from some source.

If the jury should conclude that the child had hit his head on the sink not as the result of the design or purpose of the defendant then the jury could not infer that the defendant had purposely caused the death of the child. Based on defendant's testimony and without considering the weight or credibility to be given thereto such hypothesis would be reasonable.

On the other hand, if the jury should conclude that the blunt blow to the left side of Henry's head was from the defendant's fist or from some object wielded by the defendant, defendant's culpability would be apparent in that the law presumes that a man intends results which are the natural, reasonable and probable consequence of his voluntary acts. Based on the existence of bruises of varying age on Henry's body evidencing a course of conduct, the physical custody of Henry by the defendant at times consistent with his responsibility for such conduct, the testimony of Henry's mother both as to defendant's disciplining Henry and as to his previously leaving marks from such disciplining, based on the defendant's written statement and oral testimony as to his punishment of Henry on the day and evening in question, but without regard to the weight or credibility to be given to such evidence, a reasonable hypothesis of defendant's guilt would exist, as reasonable as would be the hypothesis of his innocence.

In *State* v. *Kulig*, 37 Ohio St. 2d 157, the Supreme

Court in reversing a conviction held that "[c]ircumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any *reasonable* theory of an accused's innocence in order to support a finding of guilt." (Emphasis added.) See also, *State* v. *Urbaytis*, 156 Ohio St. 271.

In *State* v. *Sheppard*, 165 Ohio St. 293, in affirming a conviction, the Supreme Court held:

"6. Where circumstantial evidence alone is relied upon in the proof of any element of a crime, and *a jury finds* that there is a *reasonable* hypothesis of innocence, *after considering all the evidence*, it is its duty to acquit; however, where the jury finds, after full deliberation, that there is no *reasonable* hypothesis of innocence *based on the facts as it finds them to be*, and the facts which it finds are irreconcilable with any *reasonable* hypothesis other than guilt, it is its duty to convict." (Emphasis added.)

In *State* v. *Creech*, 5 Ohio App. 2d 179, this court followed the rule set forth in *State* v. *Sheppard* and reduced a conviction of second degree murder to one of first degree manslaughter. That, however, was a case where the hypothesis of innocence was reasonable but, if it were so concluded, it could not at the same time be concluded on available evidence that the hypothesis of guilt was equally reasonable. In other words, there did not and could not exist on the evidence at one and the same time two equally reasonable but opposed hypotheses.

That situation does not exist here because, without considering the weight or the credibility to be given to the evidence, this case presents a situation where the defendant's testimony would supply a reasonable hypothesis of innocence whereas other evidence supplies a reasonable hypothesis of guilt and in view of the differences in evidence one hypothesis does not operate to exclude the other.

At first blush the rule of exclusion expressed in the *Kulig* case, *supra,* that circumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt would seem to require a determination of reasonableness in the ab-

stract, *i. e.*, is the hypothesis reasonable assuming that the facts on which it is based are true?

The Ohio Supreme Court has not specifically ruled on this point but does in its expression of the rule in the *Sheppard* case imply that the determination of reasonableness includes a determination of whether the hypothesis is reasonable in view of the weight and credibility that the jury gives to the evidence. Thus, in the *Sheppard* syllabus, the phrases "a jury finds," "after considering all the evidence," and "based on facts as it finds them to be."

The Supreme Court of the United States recognizes this prerogative of the jury in the case of *Holland* v. *United States,* 75 S. Ct. 127, 137, where it says:

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

In *People* v. *Huff,* 29 Ill. 2d 315, 194 N. E. 2d 230, the Supreme Court of Illinois said and held at page 232 of the last reference:

"A conviction may be based upon circumstantial evidence, and this court has held that the manner of death and the means by which it was inflicted may be inferred from the circumstances proved. * * * The fact that the circumstantial evidence relied upon must not give rise to any reasonable hypotheses under which the defendant could be innocent of the crime charged, * * * does not mean that the trier of fact is 'required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt'. * * * "

See also *People* v. *Russell,* 17 Ill. 2d 328, 161 N. E. 2d 309.

More specifically to the point, however, are the ob-

servations of Judge Hunter of the Supreme Court of Indiana in the case of *Manlove v. State,* 232 N. E. 2d 874, 878:

"'The rule governing juries and trial courts in the trial of criminal cases is that where the evidence necessary for a conviction is wholly circumstantial in character it must be of such conclusive and persuasive force that it tends to point surely and unerringly to the guilt of the accused to an extent that it excludes every reasonable hypothesis of innocence. * * *

"However, it should also be stated that where there are two *reasonable inferences* arising from the circumstantial evidence in a case, one of *guilt* and *another of innocence,* it is not the duty or right of this Court to reverse simply because *we* might believe the circumstances to not exclude every reasonable hypothesis of innocence. It is the jury's function, not ours, to *weigh conflicting evidence* or uncontradicted evidence from which *conflicting, yet reasonable,* inferences may be drawn and then determine whether such evidence excludes every reasonable hypothesis of innocence. * * *'"

See also 24A Corpus Juris Secundum 827, Criminal Law, Section 1882, and 23 Corpus Juris Secundum 561, 575, Criminal Law, Sections 907c and 907e.

We conclude that even with respect to conflicting and coexistent hypotheses that are reasonable in the abstract a jury must consider all of the evidence in the case and apply its own determinations of weight and credibility to determine whether the hypothesis of guilt excludes that of innocence. If its determination is in the affirmative it may convict, but in the negative, it must acquit.

Accordingly, we also conclude in application to the instant case that since there was substantial evidence of probative value which, if believed, would support a determination of both a reasonable hypothesis of guilt and a reasonable hypothesis of innocence we cannot substitute our judgment for that of the jury when in consideration of all the evidence in the case and applying their own determination of weight and credibility they arrived at a verdict of guilty.

Under the second assignment of error the appellant also claims that purpose to cause death may not be derived from the use of defendant's hands alone because they are not normally considered weapons likely to produce death. That is not necessarily the state of the law and is definitely not the state of the law with respect to the facts here involved. The defendant was twenty five years of age and Henry, the victim, was but three years of age. As stated in Judge Cole's opinion in the case of *State* v. *Cummins* in this court, Logan County Case No. 1098, decided April 14, 1972 (unreported):

" * * * Such a child is delicate and easily subject to injury from a blow which might not seriously affect an adult. It may be inferred that a blow of the hand or fist could produce severe injury to such an infant. The differences in sizes and weight would permit an inference that a heavy blow could have disastrous consequences and the jury would, therefore, be justified in finding he, by acting, intended those disastrous and ultimately fatal consequences. * * * "

We find, therefore, that the first and second assignments of error are without merit.

Third Assignment of Error. "The court below erred in admitting, over defendant's objection, inflammatory and prejudicial exhibits offered by the state of Ohio relating to pictures of the deceased taken after an autopsy had been performed."

This assignment pertains to eleven colored photographic slides, admitted into evidence and displayed to the jury, which the appellant claims were calculated to inflame the jury by showing "gruesome incisions to the trunk area of the body and showing the sutures made by the pathologist after the autopsy."

It is a fact that the photographs did show extensive sutured incisions made by the pathologist but it appears from both the photographs and from the balance of the record that these photographs depicted bruises and abrasions which were not depicted by the photographs taken immediately after the abandonment of the life saving efforts taken in the hospital emergency room. There was,

therefore, a relevancy to such evidence which could not be supplied by other evidence and the jury was fully apprised by the testimony that an autopsy had taken place before the photographs were taken. The trial court concluded (Record, p. 60):

"Well, I feel as though, which in an enlightened day and age, the jury recognizes that there must be something like this in so far as performing an autopsy so long as they are not repetitions and they do show what they purport to show. For that reason, I'm going to allow the exhibits."

We feel, as did the trial court, that it was apparent the incisions and sutures were made during the autopsy and were not the immediate result of any activity on the defendant's part. Jurors must be given credit for a reasonable amount of intelligence and an ability to discriminate between what is pertinent to an issue and what is not. In our opinion the admission into evidence and display of these photographs to the members of the jury was neither error nor was it prejudicial to the defendant.

Having found no error in the three particulars assigned and argued it is our judgment that the judgment of the trial court must be affirmed.

*Judgment affirmed.*

COLE, P. J., and MILLER, J., concur.