JAWOROWSKI et al., Appellants and Cross–Appellees,

v.

MEDICAL RADIATION CONSULTANTS et al., Appellees and Cross–Appellants.

[Cite as *Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320.]

Court of Appeals of Ohio,
Montgomery County.

No. 12105.

Decided Feb. 1, 1991.

322

*Terence L. Moore* and *Mark D. Fischer*, for appellants and cross-appellees.

*Rendigs, Fry, Kiely & Dennis, Lawrence E. Barbiere* and *Wilson G. Weisenfelder, Jr.*, for appellees and cross-appellants.

GRADY, Judge.

Plaintiff-appellants, A. Edward Jaworowski and Bonzena Jaworowski, appeal from the trial court's final entry granting judgment for defendant-appellees, Medical Radiation Consultants (MRC) and Bruce Austin, following a trial in which the jury concluded that Jaworowski's exposure to a high dose of radiation from a Van De Graaff (VDG) accelerator at Wright State University (WSU) was not caused by Austin's negligent failure to fulfill his duties as the university's Radiation Safety Officer (RSO).

Jaworowski appeals from the trial court's final judgment presenting three issues for our consideration. First, did the trial court err in refusing to instruct the jury that as a matter of law Austin's contract with WSU imposed on him a duty to perform the responsibilities of RSO at the university? Second, did the trial court err in refusing to instruct the jury on negligence *per se*? Third, was the jury's verdict against the manifest weight of the evidence?

In their cross-appeal, Austin and MRC also present three issues for our consideration. First, did the trial court err in overruling a motion for summary judgment and a motion for reconsideration? Second, did the trial court err in overruling Austin's motion for a directed verdict? Third, did the trial court err in not instructing the jury on primary/reasonable assumption of risk as a defense to the action?

For reasons explained below, we conclude the trial court did not err concerning the errors presented by the parties. The decision of the trial court will be affirmed.

## I

This action was brought as the result of injuries sustained by Professor A. Edward Jaworowski while operating a VDG at WSU. Jaworowski was familiar with the VDG as he had been using one since 1966 when he was a

graduate student in Poland. Jaworowski, an associate professor of physics at WSU and head of the school's solid state research laboratory, was injured when he placed his hand within a beam of radiation generated by the VDG.

The particular VDG on which Jaworowski was injured was capable of producing a two million volt beam of radiation. Because of the potential for fatal harm, Ohio Adm.Code 3701–38–20(B)(2) required that the device be equipped with several safety features, including a visual/audio alarm system and a safety interlock system to prevent entrance to the irradiation chamber during use. Additionally, the device could not be operated unless two different colored keys were used, one to open the control panel and the other to activate the power.

In the spring of 1985, the VDG was moved to a new facility at WSU. Several of the safety features were apparently removed before transit, including the alarm system and the safety interlock system. Aware of this fact, the WSU Radiation Safety Committee (RSC)[1] did not authorize use of the VDG at the new facility. Jaworowski, though he knew that the VDG lacked the necessary safety features, proceeded to use it for research beginning sometime in the late summer or early fall of 1985. Neither Jaworowski nor his colleague Professor Joseph Hemsky notified the RSC or Jarrell R. Hagan, Director of WSU Environmental Health and Safety,[2] that they were using the VDG.[3]

On July 11, 1986, Jaworowski was assisting Lalitha Locker, a graduate student, with an irradiation project. Following irradiation of various materials, both Jaworowski and Locker entered the VDG radiation chamber. Jaworowski assumed the VDG was shut down as he placed what he believed was one of the colored operating keys in his pocket. In fact, Jaworowski had placed a key to a file cabinet in his pocket. Locker informed Jaworowski that

---

1. The Radiation Safety Committee (RSC), is a group of faculty members from different schools within the university charged with the responsibility of administering the radiation safety policy of the university. The committee reviews and approves all applications for scientific research involving the use of radioisotopes or radiation producing devices. The committee also has ultimate authority over whether an applicant may use a radiation producing device in the course of any research.

2. The duties of the Director of EHS include overseeing the university's environmental, health and safety programs. These programs encompass "radiation safety, chemical safety, biological safety, environmental health, sanitation, hazardous waste disposals, chemical disposals, radioactive disposal, pesticide application, just the total realm of health and safety in the the [sic] community and work place."

3. Dr. Albert E. Langley, Chairman of the Radiation Safety Committee at the time of the accident, testified that once authority to use a radiation-producing device is terminated, "[i]t's the responsibility of the investigator or investigators to submit another application."

heat was emanating from the aperture. Jaworowski then placed his hand near the samples and in the direct path of the energy beam. He received a massive dose of radiation which eventually required a partial amputation of his hand.

Jaworowski filed a complaint against MRC and Bruce Austin on July 1, 1988, seeking compensatory and punitive damages.[4] Jaworowski alleged that his injuries were the direct and proximate result of Austin's failure to fulfill his duties as RSO. Austin, a medical physicist and president of MRC, had contracted with WSU in the spring of 1986 to act as its RSO. In that capacity Austin was responsible for implementing a radiation safety program and determining compliance with state and federal regulations governing the use of radiation-producing devices. Although he reported to Hagan, and the RSC, Austin was not an employee of WSU. He did, however, have authority to terminate the use of radiation-producing devices that presented a risk of harm.

Austin and MRC filed a motion for summary judgment on the issue of negligence. They alleged that because Austin was under contract solely to WSU he owed no duty to Jaworowski, that Jaworowski's own actions were the sole proximate cause of the injury, and that Jaworowski assumed the risk of operating the VDG without safety equipment. The trial court overruled the motion, holding that Austin and MRC failed to show there were no genuine issues of material fact concerning the allegations. Austin filed a motion for reconsideration which the trial court overruled.

The matter was tried to a jury from January 8, 1990 to January 22, 1990. At trial numerous witnesses testified to the history and operation of the VDG, the radiation safety procedures established by WSU, the responsibilities of the RSO and the injuries sustained by Jaworowski.

At the close of Jaworowski's case-in-chief, Austin moved for a directed verdict, arguing that the evidence established that Jaworowski assumed the risk of operating the VDG without its safety equipment and that his own negligence was the sole or intervening proximate cause of his injuries. Austin also argued that the evidence failed to support punitive damages. The trial court granted Austin's motion on the issue of punitive damages but otherwise overruled the motion.

At the close of the evidence the trial court reviewed several proposed jury instructions with counsel. The trial court refused to give Jaworowski's proposed instruction on the effect of the contract between WSU and MRC and

---

4. Jaworowski also filed a complaint against WSU. This matter was tried to the Court of Claims and thus is not before us in this appeal.

his proposed instruction on negligence *per se.* The court also rejected Austin's proposed instruction on contributory negligence and assumption of risk.

The jury returned a verdict against Jaworowski, finding that Austin and MRC were not negligent. Pursuant to Civ.R. 50 and 59, Jaworowski filed a motion for judgment notwithstanding the verdict and a motion for new trial. In support, Jaworowski argued that he was entitled to (1) an instruction that Austin owed him a duty to fulfill the responsibilities of RSO and (2) an instruction on negligence *per se.* Jaworowski also argued that the jury's determination was against the manifest weight of the evidence. The motions were overruled on February 23, 1990.

Jaworowski filed a timely notice of appeal and presents three assignments of error. Austin filed a timely cross-appeal and likewise presents three assignments of error.

## II

### *Appellant's Assignments of Error*

#### A. Proposed Jury Instructions

Jaworowski's first and second assignments of error raise similar issues concerning the trial court's refusal to give two of his proposed jury instructions. We will, therefore, consider the alleged errors together:

"I. The trial court committed reversable [*sic*] error by refusing to instruct the jury in the effect of the unambiguous contract entered into between defendants/appellees and WSU.

"II. The trial court erred by failing to instruct the jury on the issue of defendants/appellees' negligence as a matter of law."

We note at the outset that our review is limited to whether the trial court abused its discretion in refusing to give a proposed instruction and, if so, whether that refusal was prejudicial. A trial court is not obliged to give a proposed instruction merely because counsel submitted it. *Jenkins v. Clark* (1982), 7 Ohio App.3d 93, 7 OBR 124, 454 N.E.2d 541.

To show reversible error, the proponent of the error must make a two part showing. First, he must show that the trial court's refusal to give a proposed jury instruction was an abuse of discretion; that is, the refusal was arbitrary, unreasonable, or unconscionable. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. Second, the proponent must demonstrate that he was prejudiced by the court's refusal to give the proposed instruction. In this connection we note that prejudicial error occurs

only if the alleged instructional flaw cripples the entire jury charge. Cf. *State v. Penson* (Feb. 26, 1990), Montgomery App. No. 9193, unreported, 1990 WL 19395; *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001; *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 19 OBR 71, 482 N.E.2d 955.

### 1. Jaworowski's Proposed Instruction on Austin's Contract

■ Where a contract is clear and unambiguous, its construction and effect are a matter of law. *Mills v. Colonial Life & Acc. Ins. Co.* (1987), 35 Ohio App.3d 29, 518 N.E.2d 1223. As observed in *Indus. Comm. v. Henderson* (1932), 43 Ohio App. 20, 23, 182 N.E. 603, 604: "[W]hen there is no dispute as to what the contract is[,] the construction and effect of the contract are matters for the court." Conversely, if there is a genuine dispute over the meaning of the terms of a contract, the construction and effect of the contract are a matter for resolution by the trier of fact. *Id.*

■ The record indicates that Jaworowski, relying on *Durham v. Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31, 1 O.O.2d 181, 139 N.E.2d 10, proposed that the jury be instructed "on the existence of a duty on the part of defendants which was owed Professor Jaworowski as a matter of law." Jaworowski argued that the contract between WSU and MRC imposed on Austin an unambiguous duty to perform the responsibilities of RSO for the benefit of WSU employees. The trial court declined to give the instruction, stating; "[B]ecause of [the] competing duties, I have indicated that I will not give the instruction on duty and that you are all free to argue how the duty of the different parties enteracts [*sic*] in this case." Jaworowski maintains this was error because Austin's contractual obligations were unambiguous and thus the instruction was required as a matter of law. We disagree.

The trial court correctly noted there were various duties in this case: the duties of the RSO, the duties of operators of the VDG, and the duties of WSU. Austin's duties as RSO were framed both by his contract with WSU, state law, and the Ohio Administrative Code. After examining the evidence, it is not clear to us what Austin's *specific* duties were as RSO. Moreover, it is not clear whether Austin's responsibilities also included a duty to protect WSU employees from radiation-producing devices. Neither is it clear how the provisions of the Ohio Administrative Code impacted on Austin's contractual obligations. The contract was not as unambiguous as Jaworowski alleges.

We conclude the trial court's refusal to give Jaworowski's proposed instruction was not arbitrary, unreasonable or unconscionable. There remained genuine issues of fact concerning the nature and scope of Austin's duties and

the trial court properly left to the trier of fact the task of resolving this question. See *Indus. Comm. v. Henderson, supra.*

### 2. Jaworowski's Proposed Instruction on Negligence *Per Se*

■ Where a legislative enactment imposes a specific duty upon a person for the safety and protection of others, the failure to observe that duty is negligence *per se. Taylor v. Webster* (1967), 12 Ohio St.2d 53, 41 O.O.2d 274, 231 N.E.2d 870; *Gressman v. McClain* (1988), 40 Ohio St.3d 359, 362, 533 N.E.2d 732, 735. As noted in *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, at paragraph three of the syllabus:

"Where there exists a *legislative enactment* commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se; *but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case.*" (Emphasis added.)

■ While certain "laws" give rise to protective obligations that are so specific and mandatory that the failure to comply is negligence *per se*, the Ohio Administrative Code provisions regulating the use of radiation-producing devices are not such "laws." The radiation-protection provisions are administrative regulations, not legislative enactments or statutes. The distinction between the two types of measure is important. The only "laws" in Ohio which historically have been held to create specific and mandatory duties the violation of which constitutes negligence *per se* are legislative enactments, not administrative regulations. See *Sausen v. Jindal* (Apr. 6, 1983), Hamilton App. No. C–820469, unreported, 1983 WL 8778. See, also, *Burnett v. Rice* (1988), 39 Ohio St.3d 44, 45, 529 N.E.2d 203, 205; *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212; *Shroades v. Rental Homes, Inc.* (1981), 68 Ohio St.2d 20, 25, 22 O.O.3d 152, 155, 427 N.E.2d 774, 777; *Ornella v. Robertson* (1968), 14 Ohio St.2d 144, 43 O.O.2d 246, 237 N.E.2d 140; *Bush v. Harvey Transfer Co.* (1946), 146 Ohio St. 657, 33 O.O. 154, 67 N.E.2d 851. Furthermore, even if a claim of negligence *per se* could be predicated on the violation of an administrative regulation, none of the provisions cited by Jaworowski would support the proposed instruction. Only a violation of a provision that imposes a specific, mandatory duty gives rise to negligence *per se*. See *Eisenhuth, supra.* Here, Ohio Adm.Code 3701–70–01(CC) defines a RSO as that "individual, designated by the registrant, who has knowledge of and responsibility for implementing the daily operation of the registrant's radiation safety program." No other section

amplifies this general provision with language that particularizes the specific, mandatory duties of the RSO. The other administrative provisions cited by Jaworowski are likewise general in nature and impose no clear mandatory duty on the RSO. And *Eisenhuth* makes clear that absent a specific mandatory duty, negligence *per se* will not lie.

### 3. Conclusion

We conclude the trial court did not abuse its discretion in refusing to instruct the jury as proposed by Jaworowski. The first and second assignments of error are, accordingly, overruled.

### B. Judgment Against the Manifest Weight of the Evidence

Jaworowski states as his third assignment of error:

"The verdict was against the manifest weight of the evidence."

In reviewing an assignment of error alleging that the jury's verdict is against the manifest weight of the evidence, we are limited to determining whether the verdict was supported by some competent credible evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276. To justify reversing the jury's verdict, a reviewing court must be fully satisfied that the verdict is indeed unsupported by and contrary to the evidence contained in the record. Thus, even if the reviewing court might reach a different conclusion, it may not reverse a judgment unless it manifestly appears from the record that the jury misapprehended the facts and reached a conclusion that was "unreasonable, improbable or illogical to such a degree that it is possible to say [the evidence] affords no reasonable foundation for the verdict * * *." 4 Ohio Jurisprudence 3d (1978) 201, Appellate Review, Section 604. Cf. *State v. Williams* (1976), 47 Ohio App.2d 330, 1 O.O.3d 393, 354 N.E.2d 691. Applying this principle, we conclude that the jury's verdict was supported by ample competent, credible evidence.

The record shows that Austin, in his capacity as RSO, informed university officials on several occasions that the VDG lacked the necessary safety devices. Further, numerous witnesses testified that because of the lack of safety features, use of the VDG was not authorized in the new facility—a fact known to Jaworowski.

The record further indicates that Jaworowski had worked with a VDG for almost twenty years, knew the dangers associated with the device, and was well aware of the harmful effects of radiation. The record establishes that Jaworowski operated the VDG fully aware that the device lacked important

safety equipment, yet he never protested this fact to anyone in authority. Further, the record establishes that Jaworowski entered the VDG chamber carrying a file cabinet key, not the VDG power system key as he thought, and placed his hand within the VDG's radiation beam even though warned by his student that the aperture was still warm.

On the foregoing record, we conclude there was ample competent, credible evidence to support the jury's conclusion either that Austin was not negligent or that Jaworowski's negligence outweighed that of Austin when their respective negligences were compared. Accordingly, we will not disturb the judgment of the trial court. *Seasons Coal Co. v. Cleveland, supra.*

Jaworowski's third assignment of error is overruled.

### III

*Cross–Appellee's Assignments of Error*

#### A. Motion for Summary Judgment

Austin states as the first assignment of error in his cross-appeal:

"The trial court erred to the prejudice of defendants/cross-appellants in overruling their motion for summary judgment and motion for reconsideration."

Civ.R. 56(C) states, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Under Civ.R. 56(C), the proponent of the motion bears the burden of proving there are no genuine issues of material fact. See *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Any close questions must be resolved for the party opposing the motion.

In deciding whether to grant a motion for summary judgment, the trial court must construe the evidence and inferences drawn therefrom in a light most favorable to the opponent. Civ.R. 56(C). See, also, *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; *Wills v.*

*Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 188, 26 OBR 160, 161, 497 N.E.2d 1118, 1120; *Luehrs v. Eichelberger Shopping Center* (Dec. 29, 1989), Montgomery App. No. 11628, unreported, 1989 WL 159177. Likewise, in considering an appeal from a trial court's decision overruling a motion, we too must construe the record in a light favorable to the opponent. *Engel v. Corrigan* (1983), 12 Ohio App.3d 34, 12 OBR 121, 465 N.E.2d 932. See, also, *Beaver v. Kroger Food Stores* (May 18, 1987), Clark App. No. 2261, unreported, 1987 WL 11261.

 The record indicates that Austin proffered three reasons in support of his motion: (1) Austin owed no duty of care to Jaworowski under his contract with WSU or the public duty doctrine of *Shelton v. Indus. Comm.* (1976), 51 Ohio App.2d 125, 5 O.O.3d 286, 367 N.E.2d 51; (2) Jaworowski's actions alone were the proximate cause of his injury; and (3) Jaworowski assumed the risk of operating the VDG without proper safety systems. The trial court overruled the motion, finding there were unresolved genuine issues of fact concerning the nature and scope of Austin's duties, whether Austin owed a duty to Jaworowski, whether Jaworowski was the sole proximate cause of his injury, and whether he assumed the risk.

We agree with the trial court that Austin and MRC failed to meet their burden of demonstrating that no genuine issues of fact existed. Given the complexity of the evidence before the trial court, the competing claims of duties owed and breached, and the interaction of the conduct of the various parties, reasonable minds could have come to different conclusions concerning Austin's duties and the effects of Jaworowski's conduct. It was not entirely clear what Austin's specific obligations were as RSO and to whom he owed a duty of reasonable performance. Neither was it clear from that evidence whether Jaworowski alone was the sole proximate cause of his injuries or whether he assumed the risk of proceeding in the face of known danger. Thus, the trial court properly overruled the motion and left to the trier of fact the task of resolving these questions. Cf. Civ.R. 56(C).

Austin's first assignment of error is overruled.

### B. Motion for Directed Verdict

Austin states as his second assignment of error:

"The trial court erred to the prejudice of defendants/cross-appellants in overruling their motion for a directed verdict."

 In determining whether to grant a directed verdict, the trial court, after viewing the evidence in a light most favorable to the party against whom the motion is made, must determine whether as a matter of law there is sufficient evidence to warrant sending the case to the jury. See *Mahoning*

*Natl. Bank v. Youngstown* (1944), 143 Ohio St. 523, 28 O.O. 462, 56 N.E.2d 218. As stated in *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68–69, 23 O.O.3d 115, 115–117, 430 N.E.2d 935, 936–938:

"When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. The evidence is granted its most favorable interpretation and is considered as establishing every material fact it tends to prove. The 'reasonable minds' test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of that party's claim. (Citation omitted) * * * A motion for a directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence."

Thus, if a court finds that upon any determinative issue reasonable minds can come to but one conclusion, and that conclusion is adverse to the opponent, it must direct the verdict for the proponent on that issue. However, if the court concludes that reasonable minds could come to differing conclusions, it must overrule the motion and submit the issue to the trier of fact. See, generally, 89 Ohio Jurisprudence 3d (1989), Trial, Section 208.

At the close of Jaworowski's case, MRC and Austin moved for a directed verdict, arguing that they were not liable for Jaworowski's injuries because the evidence established (1) that Jaworowski assumed the risk and (2) that he was the sole proximate cause of his injury. They also argued that there was insufficient evidence to support punitive damages. The trial court sustained the motion on the issue of punitive damages but overruled the motion on the other issues. We see no error in the trial court's disposition of the motion.

■■■■■ At the time Austin proffered the motion the trial court was confronted with complex and conflicting evidence concerning causation, the scope of the parties' duties, and Jaworowski's alleged assumption of risk. For example, while the VDG clearly lacked the mandated safety devices, reasonable minds could differ on whether Austin bore responsibility for insuring installation of those devices. Further, while the evidence conclusively established that Austin had undertaken the duties of RSO, reasonable minds could differ concerning the scope of Austin's duties. Finally, while the evidence established that Jaworowski operated the VDG without the safety devices,

reasonable minds could differ as to whether Jaworowski proceeded in the face of a known hazard which alone produced the injuries sustained.

Construing the evidence against the proponent, we agree with the trial court that Jaworowski presented sufficient evidence to warrant sending the case to the jury. We conclude the trial court did not abuse its discretion in overruling, in part, Austin's motion for a directed verdict.

Austin's second assignment of error is, accordingly, overruled.

### C. Jury Instruction on Assumption of Risk

Austin states as the third assignment of error:

"The trial court erred to the prejudice of defendants/cross-appellants by not instructing the jury on primary/reasonable assumption of the risk."

A jury charge must be a distinct and unambiguous statement of the law as applicable to the facts of the case. In submitting a case to a jury, the court must "separate and definitely state * * * the issues of fact made in the pleadings, accompanied by such instructions as to each issue as the nature of the case may require * * *." *Baltimore & Ohio RR. Co. v. Lockwood* (1905), 72 Ohio St. 586, 74 N.E. 1071, paragraph one of the syllabus; *Parmlee v. Adolph* (1875), 28 Ohio St. 10, paragraph two of the syllabus. See, also, *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 19 OBR 8, 482 N.E.2d 583. Reversible error arises if the jury charge is incomplete, misleading, or fails to define legal terms which are essential to the jury's deliberative process. *Marshall, supra.* See, also, *Szymczak v. Midwest Premium Finance Co.* (1984), 19 Ohio App.3d 173, 19 OBR 280, 483 N.E.2d 851.

Applying these principles, we conclude the jury charge was an appropriate statement of the law applicable to the facts. The trial court did not abuse its discretion in refusing to instruct the jury on "primary" or "reasonable" assumption of risk.

In *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780, the Supreme Court concluded that the defense of assumption of risk merged with the doctrine of contributory negligence under Ohio's comparative negligence statute, R.C. 2315.19. See, also, *Phillabaum v. Kidd* (1985), 22 Ohio App.3d 149, 22 OBR 389, 489 N.E.2d 1317. This merger established a principle that a trial court should generally not instruct a jury on assumption of risk because the defense no longer exists in Ohio as an independent bar to recovery. See *Phillabaum, supra,* at 150, 22 OBR at 390, 489 N.E.2d at 1318.

There are, however, two exceptions to the merger principle of *Anderson, supra.* The first, "express assumption of risk," arises when the plaintiff assumes a risk by "expressly contract[ing] with another not to sue

for any future injuries * * *." *Anderson, supra,* at 114, 6 OBR at 174, 451 N.E.2d at 783. That was not the situation here. The second, "primary assumption of risk," arises "where there is a lack of duty owed by the defendant to the plaintiff." *Anderson, supra,* at 114, 6 OBR at 174, 451 N.E.2d at 783. See, also, *Siglow v. Smart* (1987), 43 Ohio App.3d 55, 539 N.E.2d 636. An example of primary assumption of risk is the ball park patron who assumes the risk of being hit by a baseball simply as a function of being in a ball park. See *Cincinnati Base Ball Club Co. v. Eno* (1925), 112 Ohio St. 175, 147 N.E. 86. The management has no duty to protect patrons from that known risk. *Id.* at 180–181, 147 N.E. at 87–88.

A necessary predicate to an instruction on primary assumption of risk is the existence of some fact that suggests the defendant owed no duty or breached no duty owed. Cf. *Mima v. Akron* (1986), 31 Ohio App.3d 124, 31 OBR 211, 508 N.E.2d 974.

In this case the trial court noted that Austin assumed the role of RSO and consequently had a duty to perform the attendant responsibilities in a reasonable manner. This is not disputed by the parties. Rather, the point of contention was exactly what Austin's duties were and to whom they were owed. The matter was further complicated by the question of whether Jaworowski's own actions were the sole proximate cause of his injuries. Thus, an instruction on primary assumption of risk was not warranted as the question was not the existence of a duty but whether the scope of Austin's duty encompassed protecting Jaworowski. This issue was properly a matter for the jury to resolve under a general instruction on negligence.

We conclude the trial court did not abuse its discretion in refusing to instruct the jury on assumption of risk. Austin's third assignment of error in his cross-appeal is, accordingly, overruled.

## IV

### Conclusion

For the reasons explained above, we over Jaworowski's three assignments of error. We likewise overrule the three assignments of error raised by Austin in his cross-appeal. The decision of the trial court will, accordingly, be affirmed in all respects.

*Judgment affirmed.*

BROGAN and WILSON, JJ., concur.