OPINION
In this accelerated calendar case, submitted on the record and the briefs of the parties, appellant, Timothy G. Giovannone, appeals from the Trumbull County Court of Common Pleas judgment entered on September 22, 1999. The court granted appellee's, Schottenstein Stores Corp., motion for summary judgment and dismissed appellant's suit. Appellant's lawsuit consisted of four causes of action. This appeal only addresses the judgment with respect to the second and third causes of action. The following facts are relevant to a determination of this appeal.
In 1989, appellant began working for appellee at its Value City Furniture store in Niles, Ohio. Although he was an "at-will" employee, he clearly had a contract as to his compensation during his employment. Appellant was promoted to store manager in April of 1991. His compensation package paid him a monthly salary draw and, at the end of each fiscal year, he was to be paid a bonus based on the store's net profit. Appellant was to be paid twenty-five percent of the store's first $160,000 in operating profit, plus fifteen percent of all store operating profit in excess of that, minus his salary draw.
Appellee's fiscal year ran from August 1 of the calendar year until July 31 of the following year. On June 30, 1995, eleven months into the 1995 fiscal year, appellee informed appellant that he was being demoted from his store manager position. Appellant was offered a position as an entry-level sales associate at appellee's Cleveland store. Appellant quit.
Appellant had received $36,000 in salary draw in the 1995 fiscal year. Appellee calculated the balance of compensation due appellant by determining the store profits for the eleven months appellant worked, minus all applicable year-end adjustments, prorated for the eleven-month period. Appellee calculated the store's operating profit was $182,345 for the eleven-month period appellant was manager that year. Appellant's total compensation was calculated at $43,352, of which $36,000 had already been paid. Appellee tendered a bonus check of $7,352, which appellant refused.
The 1995 fiscal year was not typical for the Niles store. The store was located on the second floor of a building. On approximately March 18, 1995, a renovation project was begun in the office space located below the store. This project created a large amount of dust. A disruptive amount of this dust traveled through the building's ventilation system and ended up in the furniture store. The dust was cleaned up but, when the renovation work resumed, the problem recurred. Subsequently, it was determined the dust contained some asbestos. In response to this problem, appellee closed the store for the month of April 1995. The store was reopened in May.
As a result of the closing, the store lost money in April. Appellant alleges it lost $100,126 that month. Appellant also submitted evidence indicating the profits for May and June were atypically low. He attributed this to the closure of the store in April.
Apparently, appellee calculated appellant's bonus for 1995, in the same manner it had always calculated store manager bonuses. Consequently, as a result of the disruption of the business, appellant's bonus was abnormally low.
After appellant's employment had been terminated, appellee filed suit against the landlord, Covelli Properties, Inc., for the dust and asbestos incident. The lawsuit alleged the landlord was responsible for the incident. Appellee sought $600,000 in compensation for damages, lost income, and lost profits. The case was settled approximately two years later. Covelli Properties agreed to pay appellee $435,000 in the form of rent abatement.
Appellant filed suit on January 22, 1997. In his second cause of action, he alleged that appellee breached its contract by not paying the correct bonus due at the time of his termination. In his third cause of action, appellant alleged that appellee's lawsuit against Covelli Properties, Inc., sought, among other claims, damages for lost profits. Appellant claimed he was entitled to payment of a percentage of any recovery as bonus money accrued while employed as store manager.
On June 1, 1999, appellee filed a motion for summary judgment. On September 22, 1999, the trial court granted the motion. The trial court reasoned that appellee had a specific compensation plan in place at the time appellant's employment ceased. Appellee calculated appellant's bonus in accordance with this plan. Appellant failed to produce evidence to the contrary. The trial court found appellee's plan did not provide, nor was it required to provide, for any other method of calculation. Thus, the court determined appellee was entitled to judgment as a matter of law. From this judgment, appellant timely filed notice of appeal, assigning the following error:
 "The trial court committed reversible error and abused its discretion by granting summary judgment to appellee when there were genuine issues of fact in dispute, by which reasonable minds could come to more than one conclusion in determining appellant's annual bonus for fiscal year 1995."
 The standard of review for summary judgment is the same for both a trial and an appellate court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Our review is de novo. Burkholder v Straughn (June 26, 1998), Trumbull App. No. 97-T-0146, unreported, at 5. Civ.R. 56(C), provides the standard governing motions for summary judgment. In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 46-47.
In the present case, it appears that at the time appellant was terminated, he was paid in accordance with the formula of the compensation plan agreed to at that time. However, appellee had not yet received the lost profits which were included in the settlement received as a result of the construction fiasco that occurred in March and April 1995.
The question posed by this appeal is whether appellant's compensation contract is subject to the settlement obtained by appellee for losses suffered by appellee during the term of appellant's contract. Appellee has argued throughout this litigation that there is no contract that states appellant is entitled to such compensation. Conversely, appellant argues there is no contract stating that he is not entitled to such compensation and, therefore, a question of fact remains.
The narrow question is whether a sales commission contract based on profitability is enforceable against a company whose profit margin for the period in question is altered by the procurement, after the termination of the employee, of a legal settlement directly attributable to that period. This appears to be a question of first impression in Ohio. Neither the trial court, appellant, nor appellee cite any authority directly addressing this point. They rely on general contract principles and law.
Three types of simple contracts are recognized by Ohio law: express, implied in fact, and implied in law. Legros v. Tarr (1989),44 Ohio St.3d 1, 6. "`In express contracts, assent to the terms of the contract is actually expressed in the form of an offer and an acceptance.'" Thaler v. Lincoln Electric (Dec. 15, 2000), Lake App. No. 2000-L-022, unreported, at 4, quoting Stepp v. Freeman (1997),119 Ohio App.3d 68, 74. "On the other hand, in implied-in-fact contracts the parties' meeting of the minds is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that the contract exists as a matter of tacit understanding." Id. "The legal effect of an implied contract and an express contract is identical, the only distinction being the manner in which mutual assent is manifested." Shaw v. J. Pollock Co. (1992),82 Ohio App.3d 656, 661, citing 1 Williston on Contracts (4 Ed. 1990) 18-25, Sections 1-5.
In the present case, there was no express written contract of employment. While there may have been an express oral contract, at the least there was an implied in fact contract. The parties do not dispute this, although they dispute the terms. Consequently there cannot be a contract implied in law, or quasi-contract. As a result, appellant cannot proceed under the doctrine of unjust enrichment. "The rule in Ohio is that `[i]f an express contract exists concerning the services for which compensation is sought, the doctrine of unjust enrichment does not apply, in the absence of fraud, bad faith or illegality.'" (Citations omitted.) Thaler v. Lincoln Electric (Dec. 15, 2000), Lake App. No. 2000-L-022, unreported, at 8, quoting Carter v. Warner Interior, Inc. (Nov. 6, 1997), Cuyahoga App. No. 71797, unreported, at 10-11, 1997 Ohio App. LEXIS 4894. Applying Shaw, appellant cannot proceed under the doctrine of unjust enrichment where an implied in fact contract exists either.
Appellee, in its motion for summary judgment, submitted a copy of its compensation plan for its store managers. This plan specifically states that it does not constitute a contract of any kind between the parties, although the parties clearly agreed to the rate of compensation set forth in the plan.
The compensation plan appellee submitted had an effective date of August 1, 1996, over one year after appellant was terminated. Assuming this plan is otherwise representative of the old plan, and only the rate for new hires changed, it does not resolve the issue of whether appellant would be entitled to his share of profits obtained from a later obtained settlement including lost profits.
The compensation plan calls for the determination of a store's profit on the basis of operating income. The compensation plan does have an open-ended clause stating the year-end operating income may be adjusted positively or negatively for specified and unspecified reasons, including wage settlements.
"`[W]hen there is no dispute as to what the contract is[,] the construction and effect of the contract are matters for the court.' Conversely, if there is a genuine dispute over the meaning of the terms of a contract, the construction and effect of the contract are a matter for resolution by the trier of fact." Jaworowski v. Med. RadiationConsultants (1991), 71 Ohio App.3d 320, 328, quoting Indus. Comm. v.Henderson (1932), 43 Ohio App. 20, 23, 182 N.E. 603, 604. Therefore, the trial court could not have concluded as a matter of law that appellee intentionally excluded the recoupment of lost profits from the calculation of a given store's operating income and subsequent profitability.
While the settlement of appellee's suit against Covelli Properties, Inc., was not reached until 1997, and payments may have continued into 1999, the compensation was strictly for damages which occurred while appellant was the store manager in 1995. Any "lost profits" obtained in the settlement could only be profits "earned" in that period. Simply put, appellant was entitled to a percentage of the profit the store earned while he was manager. While, as a practical matter, the money was necessarily received after the fact, under this contract, a trier of fact needed to determine what portion of the settlement money includes lost profits for the eleven months of appellant's employment in fiscal year 1995.
Appellant's assignment of error has merit. We reverse and remand for proceedings consistent with this opinion.
 _______________________________ WILLIAM M. O'NEILL, JUDGE
FORD, P.J., CHRISTLEY, J., concur.