OPINION
Kevin Newton was found guilty of felonious assault by a jury in the Montgomery County Court of Common Pleas. The trial court sentenced Newton to three years imprisonment. Newton appeals from this conviction, raising two assignments of error.
On the evening of August 26, 2000, and into the early morning hours of August 27, 2000, Newton attended a party at his friend Joseph Ferraro's house. Newton arrived at the party at approximately 6:30 in the evening on August 26 and left with Aaron Ashe at around midnight of the same day. He then returned to the party with Ashe at around 2:00 in the morning on August 27 to locate Ashe's cellular phone. The victim, Kevin Few, attended the same party, arriving at approximately 4:00 in the afternoon on August 26 and leaving at approximately 7:00 in the evening. Few then returned to the party at approximately 10:00 that evening.
According to Newton, when he arrived at the party for the second time at 2:00 on the morning of August 27, he sought out Few to discuss a rumor that Few had raped the sister of one of Newton's friends, Kelly Burke, and was involved in a dispute with Burke. Few and Newton went outside to talk due to the noise in the house, and Ferraro, who was hosting the party, followed them. Newton testified that, upon being asked about his dispute with Burke, Few had answered that it involved Burke's sister and had stated, "I fucked the shit out of her, and now he's mad at me." When questioned further, Few had responded with more profanity and had attempted to punch Newton. Ferraro also testified that Few had thrown a punch at Newton. Both Newton and Ferraro stated that Newton had blocked Few's punch and had punched Few once in the face. Few then fell, hitting his head on the house and on the concrete. Few had no recollection of the fight.
After punching Few, Newton left the party, making several statements that the state describes as "conflicting." Two witnesses testified that Newton had stated, "Tell Kevin [Few] if he rapes another girl, he will get the same again." Another witness testified that Newton had said that Few "fell." Finally, a couple of witnesses testified that Newton had recounted the incident as it is recounted above-Few swung at him, he blocked it, and he hit Few once. In fact, one of these witnesses was one of the people who testified to the first comment.
Following the fight, Few was apparently "attended to" by his friends. There was testimony that, after Newton left, the people at the party shook Few to wake him up, carried him downstairs and put him in a shower with either cold or very hot water, carried him to a couch where he lay for a while, carried him to a car, drove him to another friend's house, laid him on the living room floor, and started to change his clothes. Only after all this did they carry him back to a car and drive him to the hospital. When he arrived at the hospital, Few had a broken nose, was bleeding, had several visible contusions on his head and face, and was in a "semi-coma" state. He was treated for internal bruising and swelling of the brain. Few was put on a ventilator to aid his breathing and spent eleven days in a drug-induced coma. Upon being released from the hospital, Few had to undergo intensive rehabilitation.
On September 13, 2000, Newton was indicted on two counts of felonious assault, one for knowingly causing serious physical harm to Few in violation of R.C. 2903.11(A)(1) and one for knowingly causing or attempting to cause physical harm to Few by means of a deadly weapon in violation of R.C. 2903.11(A)(2). On May 17, 2001, the jury found Newton guilty on the first count (serious physical harm) and not guilty on the second count (deadly weapon). Newton was sentenced on June 29, 2001 to three years imprisonment.
Newton raises two assignments of error.
 I. THE APPELLANT WAS DEPRIVED OF DUE PROCESS OF LAW AND A FAIR TRIAL BY THE TRIAL COURT'S REFUSAL TO INSTRUCT THE JURY THAT WITH REGARD TO SELF-DEFENSE, WHERE LESS THAN DEADLY FORCE IS USED, THE DEFENDANT HAS NO DUTY TO RETREAT.
Under this assignment of error, Newton argues that the trial court erred in refusing to instruct the jury that, in establishing a defense of self-defense, there is no duty to retreat where less than deadly force is used.
The state sets forth the correct test by which we review jury instructions:
 To show reversible error, the proponent of the error must make a two-part showing. First, he must show that the trial court's refusal to give a proposed jury instruction was an abuse of discretion; that is, the refusal was arbitrary, unreasonable, or unconscionable. * * * Second, the proponent must demonstrate that he was prejudiced by the court's refusal to give the proposed instruction. In this connection we note that prejudicial error occurs only if the alleged instructional flaw cripples the entire jury charge. * * *
Jaworowski v. Med. Radiation Consultants (1991), 71 Ohio App.3d 320,327-28. We believe that Newton has made the required showing.
In reviewing the trial court's refusal to instruct the jury as Newton requested, we are guided by the Supreme Court of Ohio's repeated holding that "if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge." State v. McCarthy (1992),65 Ohio St.3d 589, 593, citing Cincinnati v. Epperson (1969),20 Ohio St.2d 59, paragraph one of syllabus. There is no question that Newton's proposed instruction was timely and reduced to writing. Furthermore, it is clearly a correct statement of the law that a defendant has no duty to retreat before using non-deadly force to repel an attack. See State v. Perez (1991), 72 Ohio App.3d 468, 472; Columbus v. Dawson (1986), 33 Ohio App.3d 141, 142. Finally, although the state argues otherwise, we believe that the requested charge was pertinent as, without it, the jury may have presumed that Newton had had a duty to retreat and concluded that he could have done so. Thus, we find that the trial court abused its discretion in refusing to instruct the jury as Newton requested. We must now turn to whether Newton was prejudiced by the refusal.
The state argues that Newton was not prejudiced by the trial court's refusal to instruct the jury as requested because the trial court's instruction was a clear and fair expression of the facts of the case and the law of self-defense. We disagree. The trial court instructed the jury as follows:
 To establish self-defense, the defendant must prove, A, the defendant was not at fault in creating the situation giving rise to the confrontation with Kevin Few; or B-and B, the defendant had probable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and that his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm.
(Emphasis added). Newton argues that the language "his only means to protect himself," absent the instruction that he had no duty to retreat, created the possibility that the jurors would reject Newton's self-defense claim if they believed that he could have protected himself by retreating. We agree. We think it highly possible that jurors may have reached exactly that conclusion based on the trial court's instruction. Thus, the trial court's refusal to give Newton's requested instruction was prejudicial to Newton.
We note that our opinion is supported by the fact that the Supreme Court of Ohio and this court have found prejudicial error in a trial court's failure to instruct a jury, when requested to do so, that there is no duty to retreat from one's home before using deadly force. See State v. Williford (1990), 49 Ohio St.3d 247, 250-51; see, also, State v. Scott (Oct. 2, 1992), Montgomery App. No. 12686, unreported. In doing so, the supreme court rejected precisely one of the arguments employed by the state in this case-that, by rejecting Newton's self-defense claim, the jury found that he had failed to establish one of the two elements of self-defense set forth in the trial court's instruction above. The court noted that, absent the instruction that the defendant had no duty to retreat, the jury might have assumed that the defendant had such a duty. We see little distinction between the above case and this case.
The first assignment of error is sustained.
 II. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO MORE THAN THE MINIMUM SENTENCE.
Under this assignment of error, Newton argues that the trial court erred in sentencing him to more than the minimum required sentence. He argues that the court did not adhere to the applicable statute and that, by focusing on the seriousness of the harm to Few, the court effectively sentenced him twice for the same conduct-causing serious physical harm to Few. Newton also argues that the trial court erred in using prior bad conduct for which he was not charged or convicted to justify imposing more than the minimum sentence.
R.C. 2929.14(B) provides:
 [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
The minimum sentence for felonious assault is two years. Permissible sentences are two, three, four, five, six, seven, or eight years. R.C.2929.14(A)(2). The trial court sentenced Newton to three years. In doing so, it found both that the minimum sentence would demean the seriousness of Newton's conduct and that the minimum sentence would not adequately protect the public from future harm. One of these findings alone would be sufficient to impose greater than the minimum sentence; however, the trial court made both findings. Furthermore, the trial court was not required to state its specific reasons for making the findings but was only required to note that it engaged in the analysis. See State v. Edmonson (1999), 86 Ohio St.3d 324, 326-27. However, as the trial court did state the reasons for its findings and Newton argues that both findings were erroneous, we will review the trial court's sentencing for abuse of discretion.
With regard to the finding that the minimum sentence would demean the seriousness of Newton's conduct, the trial court focused on the gravity of the harm to Few. Newton argues that, because the felonious assault charge for which Newton was convicted required serious physical harm, the trial court impermissibly punished him twice for the same conduct. We disagree. Within the heading "serious physical harm," there can clearly be gradations of harm. R.C. 2901.01(A)(5) defines "serious physical harm to persons" as any one of the following:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
In this case, Few spent eleven days in the hospital in a coma, suffered a broken nose, multiple contusions on the head and face, and internal bleeding and swelling of the brain. While this level of harm clearly constitutes serious physical harm as required to support a conviction for felonious assault, harm of this level is certainly not required to establish serious physical harm. Thus, the trial court did not abuse its discretion in determining that the harm to Few was more serious than that in other felonious assaults involving "serious physical harm." Under the statute, this finding alone would have been sufficient to justify the imposition of more than the minimum sentence.
The trial court also found that the minimum sentence would not adequately protect the public from future harm. Newton argues that the trial court found that none of the recidivism factors of R.C. 2929.12(D) were present but then relied on information regarding other fights involving Newton. The trial court stated:
 And I'm going to find that, while you've not been convicted of other assaults, apparently, I think the record's clear that you've been involved in previous situations that concern the Court. They're not convictions, but it tends to show an attitude of aggression, of violent attitude. They're not convictions, but the Court is guided that the public needs protected from that particular character that I think you've developed as a young man to this point.
We have reviewed the presentence investigation report and made it part of the record in this case. The "previous situations" referred to by the court include two arrests for assault while Newton was a juvenile, one of which was amended to disorderly conduct. Both charges were dismissed without prejudice. Furthermore, during sentencing on this case, Newton had an assault charge pending in another jurisdiction.
Newton argues that it was improper for the court to rely on these "unproven charges" in finding that more than the minimum sentence was necessary to protect the public from future harm. We disagree. R.C.2929.12(D) states that a "sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes." (Emphasis added). Although Newton's two juvenile charges were dismissed and his assault charge had not yet been adjudicated, the fact that he had three such charges was sufficient to justify the trial court's finding that he had an aggressive nature. In any case, given that the trial court also found that the minimum sentence would demean the seriousness of Newton's offense, any error in considering the prior charges was harmless.
The second assignment of error is overruled.
The judgment of the trial court is reversed and the matter remanded for a new trial.
BROGAN, J. and FAIN, J., concur.