DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Huron County Court of Common Pleas which, following a jury trial, found appellant guilty and sentenced him on one count of felonious assault in violation of R.C. 2903.11(A)(2) and one count of failure to comply with order or signal of a police officer in violation of R.C. 2921.331(B)(C)(3). For the reasons stated herein, this court affirms the judgment of the trial court.
Appellant, Timothy Harris, sets forth the following six assignments of error:
"STATEMENT OF ASSIGNMENTS OF ERROR
 "1. The conviction of the Appellant/Defendant of Count I, a violation of Section 2903.11(A) (2) O.R.C., was against the manifest weight of the evidence.
 "2. The Court's instruction to the jury defining a `deadly weapon' was incorrect and plain error.
 "3. The Court's refusal to instruct the jury on the lesser included offense of assault was error.
 "4. The conviction of the Appellant/Defendant of Count II, a violation of Section 2921.331 O.R.C., was against the manifest weight of the evidence.
 "5. The admission of the prior consistent statement of a witness was error.
 "6. The Appellant/Defendant's right to a speedy trial was denied."
The following facts are relevant to this appeal. On August 21, 1998, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2) and one count of failure to comply with order and signal of a police officer in violation of R.C.2921.331(B)(C)(3). Appellant was tried on February 11 and 12, 1999.
At trial, a detective with the Huron County Sheriff's Office testified that on August 16, 1998 at approximately 8:30 p.m., he was called to assist New London police in pursuit of a vehicle traveling through the village. He testified that he took 35 millimeter photographs of the damage to appellant's vehicle as well as the police cruiser; he also testified as to the damage to the vehicles. The detective testified to the tracks in the grass of yards, caused by the vehicle being driven at a high rate of speed, and identified a cooler found in appellant's vehicle which contained beer.
A New London resident testified that appellant's vehicle crashed into a tree stump his back yard. On the evening of the crash, the resident was in his mobile home in a room approximately four feet from the crash site. The resident testified that a five hundred gallon propane tank was located by the side of the mobile home where appellant's vehicle crashed.
A husband and wife who were almost hit by a vehicle traveling at a high rate of speed and being pursued by a police car on August 16, 1998 testified that they pulled off the road to avoid being hit. The husband also testified that he saw the vehicle being pursued drive between two houses.
A passenger in appellant's vehicle on the night of August 16, 1998 testified that appellant drank three to four beers that day. She also testified that appellant did not stop when the police officer turned his lights on. She testified that appellant pulled into yards and that she told appellant to stop and let her and her two children out of the vehicle. She testified that she was frightened. When appellant hit the stump in a yard, she ran from the vehicle because she was afraid. During cross-examination of this witness, defense counsel asked a series of questions regarding her alcohol consumption on the day and evening of the crash. On re-direct examination to counter questions regarding her alcohol consumption, the state introduced a statement written by this witness on the night of the crash.
A New London police officer who assisted in the investigation of the crash testified that he found the prior witness, the passenger and her children, walking near the crash site. He testified that she was reluctant to speak with him; that he escorted her and her children back to the crash site and the other officers; and that he read her her Miranda
rights. On cross-examination, he testified that he noticed she had been drinking because he smelled a moderate odor of intoxicant on her, she had bloodshot eyes and her speech was mildly slurred.
The New London police officer who pursued appellant's vehicle and whose vehicle was eventually struck by appellant's vehicle testified that on August 16, 1998, he first came into contact with appellant when appellant pulled his vehicle from a stop sign out in front of the officer's patrol car. The officer testified that he slammed on his brakes to keep from hitting appellant's vehicle. After this near collision, the officer testified that he activated his overhead lights and pursued appellant's vehicle. The officer testified that he drove at speeds of fifty m.p.h. while in pursuit and appellant's vehicle still pulled away. The officer testified that appellant drove directly at the patrol car at approximately thirty to thirty-five m.p.h. and hit the patrol car on the side. Appellant did not stop the vehicle and continued at a high rate of speed, driving through back yards until he finally hit a tree stump in one backyard; appellant exited the vehicle and ran off. The officer identified appellant as the driver of the vehicle.
On cross-examination, the officer admitted that the police report he completed on this incident did not contain much descriptive information about the driver other than identifying the driver as a black male with a black and white headband and dark clothes, approximately five feet seven inches to five feet nine inches and one hundred seventy-five to one hundred eighty pounds. The officer admitted that he did not include a facial description of appellant in the police report. Defense counsel also played a portion of a tape recording of the police officer's conversation with other officers in which this officer was asked to provide a facial description and he responded, "He took off on me." The officer admitted that he did not provide a facial description.
The chief of the New London police testified that the cost to repair the patrol car damaged on August 16, 1998 was $2,461.90.
The state rested; appellant made a Crim.R. 29 motion for acquittal which was denied by the trial court. Following deliberations, the jury found appellant guilty of both counts. Appellant was sentenced on March 19, 1999. Appellant filed a timely notice of appeal.[1]
This court will address appellant's first and fourth assignments of error together as they require the same legal analysis. In his first assignment of error, appellant argues that his conviction on count one, a violation of R.C. 2903.11(A) (2),[2] was against the manifest weight of the evidence. In his fourth assignment of error, appellant argues that his conviction on count two, a violation of R.C. 2921.331[3], was against the manifest weight of the evidence. This court finds no merit in these assignments of error.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Ohio Supreme Court stated that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The court also noted:
 "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id.
In contrast to sufficiency, the court stated the following in regard to weight of the evidence:
 "* * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the _greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Citation omitted.) (Emphasis added by Court.) Id. at 387.
The Ohio Supreme Court also noted that when an appellate court reverses a verdict as against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
In his first assignment of error, appellant argues that the facts presented to the jury do not support the verdict. In his fourth assignment of error, appellant argues credibility of the witnesses.
Where there is conflicting evidence, it is for the trier of fact to assess the credibility of the witnesses and determine the facts. Toledo v Easterling (1985), 26 Ohio App.3d 59, 60.
After reviewing the record, this court concludes that any rational trier of fact could have found that the essential elements of felonious assault with the use of a deadly weapon and the essential elements of felony fleeing and eluding were proven beyond a reasonable doubt.
Accordingly, appellant's first and fourth assignments of error are found not well-taken.
In his second assignment of error, appellant argues that the trial court's instruction to the jury defining a "deadly weapon" was incorrect and plain error. Appellant argues that the trial court should have informed the jury that the vehicle must have been used "in a manner likely to produce death or great bodily harm" in order for the instruction to be complete. Appellant also argues that this inadequate definition was plain error. This court finds no merit in this assignment of error.
The trial court gave the standard Ohio Jury Instruction instruction to the jury on deadly weapon which follows R.C. 2923.11(A). R.C. 2923.11(A) defines a deadly weapon as:
 "* * * any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon."
This definition is incorporated into R.C. 2903.11, felonious assault. As this court stated in State v. Hutchins (Aug. 9, 1991), Lucas App. No. L-90-182, unreported:
 "While some instruments or devices, e.g., a firearm, are termed deadly weapons per se, others are not. (Citation omitted.) The test of whether an instrumentality is a deadly weapon rests upon its capability to inflict death or great bodily harm. (Citation omitted.) The manner in which the instrument is used and its nature determine its capability to inflict death or great bodily harm. (Citation omitted.) Therefore, it is well-established that in cases where an automobile is used in a manner likely to produce great bodily harm or death, an automobile can be determined to be a deadly weapon. (Citations omitted.) The determination of whether the automobile was used as a deadly weapon is a question of fact for the trier-of-fact.
(Citation omitted.) (Emphasis added.)
 "* * * Any specific intent to injure or kill did not have to be demonstrated. While intent may be considered by a trier-of-fact as one factor among many, (Citation omitted) the known capability of an automobile to kill or maim and the manner in which appellant employed that instrument are the bases for the jury's determination. * * *"
Appellant also argues that this court should apply the plain error doctrine to the second assignment of error.[4] Appellant's trial counsel failed to object to the jury instruction given. Accordingly, appellant is precluded from raising this issue on appeal except under the plain error doctrine. As noted by the Ohio Supreme Court inState v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus:
 "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."
Furthermore, an alleged error "does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." Id., paragraph two of the syllabus. We have thoroughly reviewed the record in this case and conclude that the doctrine of plain error does not apply to the giving of the challenged jury instruction.
Accordingly, appellant's second assignment of error is found not well-taken.
In his third assignment of error, appellant argues that the trial court's refusal to instruct the jury on the lesser included offense of assault was error. This court finds no merit in this assignment of error.
This court's review is limited to whether the trial court abused its discretion in refusing to provide a jury instruction as requested by appellant and, if so, whether the refusal was prejudicial.Jaworowski v. Med. Radiation Consultants (1991), 71 Ohio App.3d 320. As stated by the court in Jaworowski:
 "To show reversible error, the proponent of the error must make a two part showing. First, he must show that the trial court's refusal to give a proposed jury instruction was an abuse of discretion; that is, the refusal was arbitrary, unreasonable, or unconscionable. See, Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Second, the proponent must demonstrate that he was prejudiced by the court's refusal to give the proposed instruction. In this connection we note that prejudicial error occurs only if the alleged instructional flaw cripples the entire jury charge. (Citations omitted.)" Id. at 327-328.
It is well settled that:
 "The fundamental rule for determining the scope of the instruction to be given by the court is that it should be adapted to and embrace all issues made by the pleadings and the evidence. * * * The instruction should be broad enough to properly cover the issues presented for consideration, or all the facts in issue which the evidence tends to establish or disprove." (Footnotes omitted.) 89 Ohio Jurisprudence 3d (1989) 354-355, Trial, Section 289.
In State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus, the Ohio Supreme Court stated:
 "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. (State v. Kidder [1987], 32 Ohio St.3d 279, 513 N.E.2d 311; State v. Davis [1983], 6 Ohio St.3d 91, 6 OBR 131, 451 N.E.2d 772 [456 N.E.2d 772]; State v. Wilkins [1980], 64 Ohio St.2d 382, 18 O.O. 3d 528, 415 N.E.2d 303, clarified.)"
In Thomas, the Supreme Court quoted the following from State v.Kidder [1987], 32 Ohio St.3d 279, 282-283:
 "* * * `Even though so defined, a charge on the lesser included offense is not required, unless the trier of fact could reasonably reject an affirmative defense and could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense.' (Citation omitted.)" Id. at 216.
Upon consideration of the above law and the facts of this case, this court concludes that appellant has failed to meet his burden. It was not an abuse of discretion for the trial court to refuse to instruct the jury on the lesser included offense of assault. This court does not find the refusal to provide the requested instruction prejudicial in light of the facts of this case.
Accordingly, appellant's third assignment of error is found not well-taken.
In his fifth assignment of error, appellant argues that the admission of a statement written by a witness was error. Appellant argues that the statement was hearsay and the trial court erred in admitting the statement. This court finds no merit in this assignment of error.
During cross-examination of the passenger, the defense attempted to attack her credibility with questions related to her alcohol consumption and her state of intoxication on the night of the incident. On re-direct, the state used the statement written by her on the night of the incident to rebut this attempt. In admitting the written statement over objection by the defense, the trial court stated that the exhibit went to the issue of whether or not the passenger was intoxicated at the time she wrote the statement in light of the questions asked by the defense. On appeal, appellant argues that the exhibit is hearsay and should not have been admitted.
"Hearsay" is defined in Evid.R. 801(C) as an out-of-court statement that is "offered in evidence to prove the truth of the matter asserted." A statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents. As noted by the Ohio Supreme Court inState v. Williams (1988), 38 Ohio St.3d 346, 348, fn. 4:
 "For example, an out-of-court statement which would otherwise be considered hearsay may be admitted to show the existence of a verbal act (such as the acceptance of an offer) to give meaning to otherwise ambiguous conduct, to show the effect on the hearer, and to show the mental state of the declarant. Giannelli, Ohio Evidence Manual (1982) 7-8, Section 801.06."
This court also notes the following analysis by the Fourth Appellate District in State v. Jones (Mar. 15, 1995), Washington App. No. 94CA11, fn. 1, unreported:
 "As Professor Strong points out, where the impeachment consists primarily of allegations of an inaccurate memory, a consistent statement which is given while the memory was fresh should be received. Under Evid.R. 401 and 402, it is logical that this prior statement would be relevant to charges of an inaccurate memory. See McCormick, Evidence (4 Ed. 1992), Section 47. See, also, 4 Wigmore, Evidence (Chadbourn Rev. 1972), Section 1126. In other words, where the means of impeachment is a charge of a faulty memory, evidence of a prior consistent statement made when the event was recent and memory was fresh, should be received for rehabilitation. See State v. Frye (Aug. 14, 1979), Franklin App. No. 79AP-154, unreported."
In Frye, the appellate court approved the admission of a written statement to show that a witness was not so intoxicated that he could not recall the events which occurred.
Our standard of review of the trial court's admission or exclusion of relevant evidence is the abuse of discretion standard. State v.Jells (1990), 53 Ohio St.3d 22, 30; State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. In order to find error in the court's ruling on an evidentiary issue, this court must find the trial court abused its discretion. An abuse of discretion connotes more than an error of law or judgment, it implies an unreasonable, arbitrary or unconscionable attitude. State v. Moreland (1990), 50 Ohio St.3d 58,61. This court has reviewed the record and finds that the trial court did not abuse its discretion in admitting the exhibit in question.
Accordingly, appellant's fifth assignment of error is found not well-taken.
In his sixth assignment of error, appellant argues that his right to a speedy trial was denied. Appellant argues that the triple count provisions of R.C. 2945.71(E) apply to this case and that his motion to dismiss based upon an alleged violation of the right to speedy trial should have been granted. Appellant's argument overlooks the fact that he was arrested for charges other than those in this case. This court finds no merit in this assignment of error.
Appellant was indicted on August 21, 1998 on the charges in this case. When Richland County authorities attempted to arrest appellant on August 23, 1998 on a warrant on the charges in this case, appellant resisted. Appellant was arrested and indicted for assaulting a police officer. He was tried and convicted of resisting arrest; appellant was sentenced on November 16, 1998. On December 10, 1998, the Richland County Sheriff's office notified Huron county that appellant had been sentenced on the misdemeanor charges.
In State v. Butcher (1986), 27 Ohio St.3d 28, 30, the Ohio Supreme Court held that it is the state's responsibility to document the existence of other pending charges and to demonstrate that the defendant is being held in jail on additional charges and not solely on the pending charge. In the case sub judice, the state complied with the requirements.
The state presented documents evidencing the facts of appellant's arrest and conviction on other charges. The trial court concluded, and this court agrees, that because appellant was incarcerated on charges other than those in this case, the triple count provisions of R.C. 2945.71(E) do not apply to this case. Therefore, appellant's motion to dismiss based upon an alleged violation of the right to speedy trial was properly denied.
Accordingly, appellant's sixth assignment of error is found not well-taken.
On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Huron County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs for this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., JUDGES CONCUR.
 ____________________________ Peter M. Handwork, J.
[1] Although appellant is represented by appointed counsel on appeal who filed a brief and "Response Brief," appellant has filed a "Response Brief Supplement." While criminal defendants have a right to act pro se or to have counsel, they have no right to "hybrid representation." State v. Thompson (1987), 33 Ohio St.3d 1,6-7,; see, also, State v. White (1991), 71 Ohio App.3d 550,551-552, fn. 1. Accordingly, appellant's pro se "Response Brief Supplement" is not properly before this court.
[2] R.C. 2903.11(A)(2), felonious assault, provides:
 "(A) No person shall knowingly do either of the following:
"* * *
 "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
[3] R.C. 2921.331, failure to comply with order or signal of a police officer, provides:
 "(A) No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic.
 "(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
 "(C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.
 "(2) A violation of division (A) of this section is a misdemeanor of the first degree.
 "(3) Except as provided in divisions (C)(4) and (5) of this section, a violation of division (B) of this section is a misdemeanor of the first degree.
 "(4) Except as provided in division (C)(5) of this section, a violation of division (B) of this section is a felony of the fourth degree if the jury or judge as trier of fact finds by proof beyond a reasonable doubt that, in committing the offense, the offender was fleeing immediately after the commission of a felony.
 "(5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
 "(i) The operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property.
 "(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.
 "(b) If a police officer pursues an offender who is violating division (B) of this section and division (C)(5)(a) of this section applies, the sentencing court, in determining the seriousness of an offender's conduct for purposes of sentencing the offender for a violation of division (B) of this section, shall consider, along with the factors set forth in sections 2929.12 and 2929.13 of the Revised Code that are required to be considered, all of the following:
"(i) The duration of the pursuit;
"(ii) The distance of the pursuit;
 "(iii) The rate of speed at which the offender operated the motor vehicle during the pursuit;
 "(iv) Whether the offender failed to stop for traffic lights or stop signs during the pursuit;
 "(v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;
 "(vi) Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required;
 "(vii) Whether the offender committed a moving violation during the pursuit;
 "(viii) The number of moving violations the offender committed during the pursuit;
 "(ix) Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense.
 "(D) If an offender is sentenced pursuant to division (C)(4) or (5) of this section for a violation of division (B) of this section, and if the offender is sentenced to a prison term for that violation, the offender shall serve the prison term consecutively to any other prison term or mandatory prison term imposed upon the offender.
"(E) As used in this section:
 "(1) "Moving violation" has the same meaning as in section 2743.70 of the Revised Code.
 "(2) "Police officer" has the same meaning as in section 4511.01 of the Revised Code."
[4] In the appellate brief, counsel states that he declines to challenge the effectiveness of trial counsel.