DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Randall L. Carpenter, appeals from the judgment of the Medina County Court of Common Pleas, which entered judgment in favor of Appellee, Wellman Products Group ("Wellman Products") pursuant to a general jury verdict. We affirm.
 I. {¶ 2} Wellman Products is a manufacturer of friction materials for non-automotive applications, including aircraft and highway vehicles, and construction equipment. Mr. Carpenter was employed at Wellman Products' Medina, Ohio facility as a continuous improvement engineer until February 2002. For about 15 years prior to July 2001, Mr. Carpenter was employed by Wellman Products as an aircraft project engineer whose focus was on testing and evaluating friction materials for aircraft brakes. At this time, Mr. Carpenter had an associate's degree in accounting, but did not possess a college degree in engineering.
 {¶ 3} In June 2001, Wellman Products informed all of its employees in writing of the recessionary trend in the economy, and the "deteriorating markets and the difficulties that [Wellman Products] was facing[.]" Wellman Products informed the employees of its plans for a "[ten] to 20 percent reduction in the workforce." As part of its efforts to withstand the economic difficulties the company was facing, Wellman Products turned its focus on cost containment and new product development. As part of its efforts to achieve these goals, Wellman Products implemented a new "Six Sigma" program, a statistical method of problem solving which aids in quality control.
 {¶ 4} In July 2001, Wellman Products reorganized the engineering department into two new groups, the Continuous Improvement Group and the New Product Introduction Group. Pursuant to the engineering department reorganization, the Medina engineers were transferred into the Continuous Improvement Group. Thereafter, Wellman Products hired an individual with a bachelor of science in mechanical engineering technology, to take on the responsibilities of the New Products Engineering Group as a project engineer so that the Continuous Improvement Group could focus on its own responsibilities.
 {¶ 5} At this time, Mr. Carpenter's work focused primarily on the aircraft brake line, which continued to suffer from the recession. A new line of aircraft not using friction materials was also being developed at the time. Additionally, the aircraft that used Wellman Products' friction products was being retired in favor of aircraft using the new materials. The ensuing events of September 11, 2001, served to further aggravate the economic and financial effects on Wellman Products. Pursuant to the events of September 11th, Wellman Products informed its employees of a freeze on salary merit increases and salary hiring.
 {¶ 6} The human resources vice president, John McAvoy, made the decision to lay off Mr. Carpenter, effective February 2002. Mr. Carpenter was 50 years old at this time.
 {¶ 7} On March 6, 2002, Mr. Carpenter filed suit against Wellman Products, asserting an age discrimination claim pursuant to R.C.4112.02(A). At trial, Mr. McAvoy testified that he based this decision upon the reduction in the amount of aviation prototype work at Wellman Products; the fact that the type of work Mr. Carpenter had been performing was diminishing; and that "[Mr. Carpenter] really didn't have the tools and the experience to move forward as a continuous improvement engineer." Furthermore, Mr. McAvoy testified that he was aware of Mr. Carpenter's difficult attitude. Mr. McAvoy testified that Mr. Carpenter was unable or unwilling to "embrac[e] all of the changes and the new technologies and new engineering tools that were important to Wellman [Products.]"
 {¶ 8} Mr. McAvoy also testified that no one was hired to assume Mr. Carpenter's duties, and that his duties were dispersed between the Research and Development management personnel[1] and the remaining employees in the Continuous Improvement Group. Additionally, Mr. McAvoy testified that other salaried employees were involuntarily terminated from the facility from January to April 2002.[2] Both parties timely objected to the jury charge given by the court. The court issued its own jury instructions, to which both parties had timely objected. Thereafter, a jury entered a general verdict in favor of Wellman Products. Mr. Carpenter filed a motion for new trial, questioning the sufficiency of the jury charge, which the trial court overruled. This appeal followed.
 {¶ 9} Mr. Carpenter timely appealed, asserting one assignment of error.
 II. Assignment of Error
"The trial court prejudicially erred when it overruled the plaintiff-appellant's objection to the instructions given in the jury charge and gave the jury an erroneous instruction on the appellant's age discrimination claim[.]"
 {¶ 10} In his sole assignment of error, Mr. Carpenter avers that the trial court prejudicially erred when it overruled Mr. Carpenter's objection to the jury instructions given by the court in the jury charge regarding the age discrimination claim. Mr. Carpenter maintains that the court's jury instructions were erroneous, asserting that the instructions were confusing. We disagree.
 {¶ 11} A trial court must charge a jury with instructions that are a correct and complete statement of the law. Marshall v. Gibson (1985),19 Ohio St.3d 10, 12. "A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." Id., citing Parmlee v. Adolph
(1875), 28 Ohio St. 10, paragraph two of the syllabus. However, the precise language of a jury instruction is within the discretion of the trial court. Youssef v. Parr, Inc. (1990), 69 Ohio App.3d 679, 690. In reviewing jury instructions on appeal, this Court has previously stated that
"an appellate court reviews the instructions as a whole. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." (Citations omitted.) Wozniak v. Wozniak (1993),90 Ohio App.3d 400, 410; see, also, Kokitka v. Ford Motor Co. (1995),73 Ohio St.3d 89, 93.
 {¶ 12} In order to demonstrate reversible error with respect to a trial court's refusal to give a proposed instruction, an appellant must demonstrate that, first, the trial court abused its discretion by failing to give the requested instruction, and second, that the appellant was prejudiced as a result. Irvine v. Akron Beacon Journal, 147 Ohio App.3d 428,2002-Ohio-2204, at ¶ 31, citing Jaworowski v. Med. RadiationConsultants (1991), 71 Ohio App.3d 320, 327. The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Thus, if a reviewing court finds that a trial court in fact erred in refusing to give a proposed instructions, such a refusal constitutes reversible error only if it is found that the refusal was arbitrary, unreasonable, or unconscionable, and that the appellant was prejudiced as a result. See id.; Irvine at ¶ 31. Prejudicial error occurs only if the alleged instructional error "cripples the entire jury charge."Jaworowski, 71 Ohio App.3d at 327-28, citing State v. Penson (Feb. 26, 1990), 2nd Dist. No. 9193.
 {¶ 13} Mr. Carpenter asserted in his complaint that he was discriminated against by Wellman Products in violation of R.C. 4112.02(A), which provides the following:
"It shall be an unlawful discriminatory practice: (A) For any employer, because of the * * * age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 14} Furthermore, R.C. 4112.14(A) forbids an employer from discharging an employee who is aged 40 or older without just case, who is otherwise physically able to perform the duties and who also meets the requirements of the job. To succeed in an employment discrimination action, one must prove that either disparate treatment existed, or that a disparate impact resulted due to any employer's discriminatory ways.Dunnigan v. Lorain, 9th Dist. No. 02CA008010, 2002-Ohio-5548, at ¶ 11, citing Abram v. Greater Cleveland Regional Transit Auth., 8th Dist. No. 80127, 2002-Ohio-2622, at ¶ 40. Disparate treatment occurs when an employer treats an employee less favorably than others based on an unlawful motive. Abram, at ¶ 41, citing Internatl. Bhd. of Teamstersv. United States (1977), 431 U.S. 324, 335, fn. 15, 52 L.Ed.2d 396.
 {¶ 15} A plaintiff may establish a prima facie case of unlawful discrimination by producing either direct or indirect evidence of discrimination. Harold v. Bridgestone/Firestone, Inc. (Sept. 16, 1998), 9th Dist. No. 18915. In this case, Mr. Carpenter claims that Wellman Products discriminated against him when it made the decision to lay him off. Mr. Carpenter does not dispute the fact that no direct evidence of age discrimination was presented during the proceedings before the trial court. In fact, during his testimony at trial, Mr. Carpenter acknowledged that no statements had been made by Wellman Products regarding age. Absent direct evidence in the record from which a prima facie case of age discrimination can be established, a plaintiff may prove discrimination by showing the following, as stated by the Supreme Court of Ohio:
"In order to establish a prima facie case of age discrimination, violative of R.C. 4101.17, in an employment discharge action, plaintiff-employee must demonstrate (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class." Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501,503-04, quoting Barker v. Scovill, Inc. (1983), 6 Ohio St.3d 146, paragraph one of the syllabus.
An employer may then overcome the presumption arising from the establishment of a prima facie case by setting forth a legitimate, nondiscriminatory reason for the plaintiff's discharge. Kohmescher,61 Ohio St.3d at 503-04, citing Barker, 6 Ohio St.3d at paragraph one of the syllabus. Once an employer does so, the plaintiff must then show that the employer's reason was only a pretext for unlawful discrimination.Kohmescher, 61 Ohio St.3d at 503-04, citing Barker, 6 Ohio St.3d at paragraph one of the syllabus.
 {¶ 16} In the instant case, Wellman Products submitted as its reason for Mr. Carpenter's layoff the company's decision to implement a workforce reduction. "A workforce reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." Barnes v. GenCorp, Inc. (C.A. 6, 1990), 896 F.2d 1457, 1465, certiorari denied (1990), 498 U.S. 878, 112 L.Ed.2d 171. It has been said that a person is "replaced" "only when another employee is hired or reassigned to perform the plaintiff's duties." Id; see, also, Gordon v.Universal Elecs. (Oct. 1, 1997), 9th Dist. No. 18071, quoting Atkinsonv. Internatl. Technegroup, Inc. (1995), 106 Ohio App.3d 349, 359. However, an employee "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." Barnes, 896 F.2d at 1465.
 {¶ 17} This Court has previously held that the employee's burden in demonstrating discrimination is heavier when a reduction in force is required by economic necessity. See, e.g., Manofsky v. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 669; Wang v. Goodyear Tire Rubber Co. (1990), 68 Ohio App.3d 13, 16. When there is a reduction in force, a prima facie case of age discrimination is not established unless the employee shows that he or she was actually replaced by a younger person. Murphy v. East Akron Community House (1989),56 Ohio App.3d 54, 57. "The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination." Id., citingLaGrant v. Gulf Western Mfg. Co., Inc. (C.A. 6, 1984), 748 F.2d 1087,1090.
 {¶ 18} Furthermore, in such cases of corporate reorganizations, an employee who has been discharged carries a greater burden of supporting charges of discrimination and must come forward with additional, direct, circumstantial, or statistical evidence that age was a factor in his termination, in order to make out a prima facie case. See Murphy,56 Ohio App.3d at 57. See, also, Barnes, 896 F.2d at 1465. Thus, in the instant case, Mr. Carpenter had the responsibility to demonstrate that the reassignment of his job duties were meant to replace him and were not simply part of the reorganization efforts of Wellman Products due to the economic setbacks. See, e.g., Gordon, supra.
 {¶ 19} In this case, both parties objected to the trial court's instructions, and submitted proposed jury instructions to the court. At trial, the judge and the respective counsel held a side bar pursuant to Mr. Carpenter's objection to the court's jury instructions. Each party argued its respective position, and a review of the trial transcript indicates that the judge considered these arguments. After considering these arguments and the proposed instructions, the court stated on the record its reasons for not issuing Mr. Carpenter's proposed jury instructions and instead issuing its own. In its March 7, 2003 journal entry denying Mr. Carpenter's motion for new trial, the court reiterated its position on its jury instructions, stating that the instructions as given by the court were proper under the facts of the instant case and the applicable law of this district.
 {¶ 20} On appeal, Mr. Carpenter does not dispute that portion of the court's instructions setting forth the first three elements of a prima facie case of age discrimination as stated supra. See Kohmescher,61 Ohio St.3d at 503-04, quoting Barker, 6 Ohio St.3d at paragraph one of the syllabus. Mr. Carpenter's sole assignment of error only challenges the trial court's articulation in its jury instructions of the fourth element of this test. Mr. Carpenter claims that the court's statement of this element was erroneous. He claims that the instructions were confusing in the context of this case because they required the jury to find that Mr. Carpenter was replaced, when Mr. Carpenter claims that he was not replaced within the meaning of the term "replace" as defined by the Supreme Court of Ohio. Mr. Carpenter also argues that the trial court's articulation of the definition of the term "replacement" was "not an accurate or a complete statement of the law." Mr. Carpenter claims that the court's use of "replacement" misled the jury in its determination, and that this prejudiced his case.
 {¶ 21} Mr. Carpenter offers a different theory of age discrimination in his context, basing his theory on the claim that Wellman Products hired younger people before laying off Mr. Carpenter, and then placing these employees in Mr. Carpenter's position, thereby constituting age discrimination. We note that a review of the record does not corroborate this claim; there is no evidence tending to indicate that younger people were hired with the expectation of "replacing" Mr. Carpenter, and that his age played any role in such hiring decisions.
 {¶ 22} In response to Mr. Carpenter's age discrimination claim, Wellman Products offered as its reason for terminating Mr. Carpenter, a layoff decision and reorganization of Mr. Carpenter's department pursuant to the economic downturn and subsequent unfortunate events occurring on September 11, 2001. Mr. Carpenter does not contest this proposed reason. Additionally, we observe that Wellman Products introduced evidence at trial which supports the notion that Mr. Carpenter's performance on the job was questionable.[3]
 {¶ 23} In 1999, Wellman Products acquired a management team which instituted a number of changes, including a requirement that written performance reviews be issued within the company. These performance appraisals ranked employees on a ranging from "exceptional" to "below standards". In December 2000, Mr. Carpenter received his first performance evaluation, which on this scale of one to four, rated him at slightly below the "meets standards" ranking. Also, during his testimony at trial, Mr. Carpenter admitted to having difficulty understanding and applying the Six Sigma program. Additionally, Mr. Carpenter's December 2000 evaluation indicated that Mr. Carpenter had a tendency to "`protest change'" and make "`disparaging'" comments on the job.
 {¶ 24} In fall of 2001, Wellman Products ranked the 58 salaried employees, on performance, skill, ability, and flexibility. Mr. Carpenter was ranked 55 of 58 employees in this ranking. At the same time, Wellman Products was considering further reductions in the workforce. Mr. Carpenter's supervisor after the reorganization, Jason Bullock, also had conversations with Wellman Products' executives regarding Mr. Carpenter's performance. Mr. Bullock testified to this issue at trial, stating that Mr. Carpenter had a general lack of knowledge regarding the Six Sigma program, a general lack of a skill set for continuous improvement engineering, and an inappropriate attitude that was affecting his work.
 {¶ 25} Mr. Carpenter argues that the trial court's jury charge regarding a prima facie case of age discrimination was erroneous. That portion of the trial court's jury instructions pertaining to Mr. Carpenter's error assignment states the following:
"[T]he first step in your analysis is to decide whether or not the Plaintiff-employee has demonstrated by a preponderance of the evidence that, one, he was a member of a statutorily protected class; two, that he was discharged; three, that he was qualified for the position; and, four, he was replaced by, or that the discharge was permitted by the retention of, a person not belonging to the protected class.
"Ohio law defines `replacement' in this context as follows: A person is `replaced' only when another employee is hired or reassigned to perform that person's duties.
"A person is not replaced when another employee is assigned to perform the Plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.
"* * *
"When there is a reduction in force, a prima facie case of age discrimination is not established unless the employee shows he was actually replaced by a younger person.
"The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination.
"In such cases of corporate reorganization, an * * * employee who has been discharged must come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination."
 {¶ 26} Mr. Carpenter oddly supports his assignment of error with the argument that the jury charge discussing the fourth prong of the prima facie age discrimination test should have read as follows: "additional direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." The trial court's jury instructions quoted above indeed addressed Mr. Carpenter's responsibility to set forth such additional evidence. Furthermore, the court's articulation of the definition of "replacement" appears to mirror what has been stated by the Supreme Court of Ohio, quoted supra. See Barnes, 896 F.2d at 1465.
 {¶ 27} Because this case involves a reduction in force scenario, Mr. Carpenter also had to meet the higher burden to come forward with additional evidence tending to show that his layoff occurred due to an impermissible purpose, as the trial court properly noted in its jury instructions. Furthermore, Mr. Carpenter would only be fully successful in establishing the fourth element of a prima facie age discrimination case if the trier of fact, the jury, found that such additional evidence presented by him was actually sufficient to establish that he was in fact laid off for an impermissible purpose.
 {¶ 28} In this case, the trial court clearly included in its jury instructions a clear and unambiguous statement that a party claiming age discrimination in a reduction in force situation must set forth such additional evidence that the employee was let go for an impermissible purpose, i.e., that age was a factor in the employment decision. It is important to note that this case presents a situation in which the employer raises a reduction in force as a reason for the layoff, but also points to several pieces of evidence which indicate that Mr. Carpenter's quality of performance in certain areas was questionable. In deciding whether to grant Mr. Carpenter's objection to the trial court's jury instructions, the court noted this point, as well.
 {¶ 29} Viewing the instructions in their entirety, and in light of the foregoing discussion, we cannot conclude that the trial court incorrectly and incompletely stated the law applicable to the evidence presented before the trial court. See Marshall, 19 Ohio St.3d at 12. Therefore, we cannot find that the trial court's decision to issue the court's version of the instruction, over the objection of Mr. Carpenter's counsel, was an arbitrary, unreasonable, or unconscionable decision. SeeBlakemore, 5 Ohio St.3d at 219. Thus, we also refuse to conclude that the trial court abused its discretion in refusing to issue Mr. Carpenter's proposed jury instructions and instead issuing the court's version of the jury instructions with respect to the law regarding age discrimination. See Irvine at ¶ 31. Moreover, in light of the evidence produced in this case, we cannot conclude that the trial court's instructions were misleading. See Wozniak, 90 Ohio App.3d at 410.
 {¶ 30} As discussed supra, Mr. Carpenter still had the responsibility to set forth additional evidence indicating that age was a factor used by Wellman Products in its layoff decision. See Murphy,56 Ohio App.3d at 57. Therefore, even if we were to conclude that the trial court's instructions constitute error, in light of the evidence presented before the trial court, it would be questionable whether such error would be reversible. See Wozniak, 90 Ohio App.3d at 410. Therefore, we cannot necessarily say that Mr. Carpenter was prejudicially affected by the court's instructions to the jury. See Irvine at ¶ 31. Accordingly, Mr. Carpenter's sole assignment of error is overruled.
 III. {¶ 31} Mr. Carpenter's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
Whitmore, J., concurs.
Baird, P.J., concurs in Judgment Only.
[1] We observe that Ian Mackay, a fifty-seven year old employee, was made in charge of the former functions of Mr. Carpenter that the RD management personnel took over.
[2] The other individuals involuntarily terminated included a 22 year-old, a 26 year-old, several 29 year-old employees, and one other 50-year old individual.
[3] In answering the jury interrogatories, the jury did conclude that Mr. Carpenter had proved, by a preponderance of the evidence, that he was qualified for the position of Continuous Improvement Engineer. However, this subsequent determination by the jury is irrelevant to the issue of the trial court's construction of the jury instructions.