[Cite as *Weisfeld v. PASCO, Inc.*, 2013-Ohio-1528.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

TODD WEISFELD

    Appellant

    v.

PASCO, INC., et al.

    Appellee

C.A. No.    26416

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2011 05 2864

DECISION AND JOURNAL ENTRY

Dated: April 17, 2013

HENSAL, Judge.

{¶1}    Todd Weisfeld appeals the judgment of the Summit County Common Pleas Court granting summary judgment to PASCO, Inc. This Court affirms.

I.

{¶2}    In March 2008, PASCO hired Mr. Weisfeld to be its director of technology. He was 46 years old at the time. His initial responsibilities included monitoring financial data, formulating company policies, developing subordinates, providing timely reports, assisting with personnel matters, providing input on strategic direction, developing and implementing business plans, leading tactical teams, and making moderate purchasing decisions. A couple of months after he joined PASCO, the company hired Balajee Thangavelu to be its vice-president of information technology. Consequently, the company reassigned some of his duties, particularly his role in the company's personnel decisions, to Mr. Thangavelu.

**{¶3}** At the time PASCO hired Mr. Weisfeld, the company's largest client was the State of California. PASCO helped the State monitor compliance with its insurance regulations. According to Mr. Spitalieri, PASCO's president, the California contract accounted for approximately 80 to 90 percent of the company's revenues. When the contract was up for renewal in 2009, however, the State decided to handle all of the monitoring itself. As a result, Mr. Spitalieri had to lay off a number of employees. He testified that, before PASCO lost the contract, it had between 100 and 105 employees. By the end of 2010, it was down to just over 20 employees.

**{¶4}** Although most of the layoffs happened shortly after PASCO lost the contract, it also eliminated 6 positions in 2010. According to Mr. Thangavelu, at some point, he and Mr. Spitalieri determined that the company no longer needed a director of technology, only a network coordinator. He explained that, while the director of technology was responsible for systems management, computer operations, financial control, purchasing, vendor management, and had various other management responsibilities, the network coordinator position involved only computer operations and some systems management. To the extent the other duties were still necessary, they divided them among PASCO's other employees.

**{¶5}** Mr. Spitalieri began looking for someone for the network coordinator position and eventually determined that twenty-nine year old Jonathan Webber was a viable candidate. Before offering the job to Mr. Webber, Mr. Spitalieri and Mr. Thangavelu explained the situation to Mr. Weisfeld and offered to let him stay on as the network coordinator at a significantly reduced salary. Mr. Weisfeld testified that he declined the offer because he was upset that the company had searched for someone to take over his job without his knowledge and because it seemed like, even if he had stayed, the company did not intend to include him in its long-term

plans. According to Mr. Weisfeld, Mr. Spitalieri told him that he was trying to purchase a company that had employees that did the same type of work as Mr. Weisfeld and that he could get somebody from that other company who would not only be younger, but would do the job for half the salary.

{¶6} After Mr. Weisfeld declined the network coordinator position, PASCO hired Mr. Webber. He began in December 2010. Mr. Weisfeld was initially scheduled to stay until the end of the month so that he could help train Mr. Webber. After only a few days, however, Mr. Webber quit. Mr. Weisfeld agreed to keep working while PASCO searched for a different network coordinator. In January 2011, the company hired a 60-year-old former employee to take the position. Mr. Weisfeld stayed for another week in order to assist with the transition, and PASCO paid him until the end of the month.

{¶7} After leaving PASCO, Mr. Weisfeld sued it for age discrimination, intentional infliction of emotional distress, and violation of Ohio's minimum fair wage standards act under Section 4111.03(A) of the Ohio Revised Code. Following discovery, PASCO moved for summary judgment. The trial court granted PASCO's motion on Mr. Weisfeld's age discrimination claim because it determined that there was no genuine issue of material fact that the company terminated him pursuant to a reduction in workforce and had not replaced him. It also determined that Mr. Spitalieri's single comment about finding someone "younger" was too remote and inconsequential to consider as evidence of age discrimination. The court granted summary judgment to PASCO on Mr. Weisfeld's wage claim because it determined that he fell under an exception to the law for administrative employees. Finally, it granted summary judgment to PASCO on the intentional infliction claim because it determined that Mr. Weisfeld

had not alleged any facts that supported a finding that PASCO's conduct was extreme or outrageous. Mr. Weisfeld has timely appealed the court's judgment, assigning three errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY WEIGHING THE EVIDENCE IN DETERMINING A QUESTION OF FACT THAT WEISFELD WAS TERMINATED PURSUANT TO A REDUCTION IN FORCE.

{¶8} In his first assignment of error, Mr. Weisfeld argues that the trial court incorrectly weighed his deposition and affidavit against the testimony of PASCO's representatives when it determined whether PASCO was entitled to summary judgment. In its motion, PASCO asserted that it terminated Mr. Weisfeld pursuant to a reduction in force. Mr. Weisfeld disputed its claim, arguing that the reduction had occurred in 2009, immediately after PASCO lost the California contract. The company did not terminate him, on the other hand, until over a year later.

{¶9} The trial court incorrectly made and premised part of its judgment on findings of fact. *See Schaffer v. FirstMerit Bank, N.A.*, 186 Ohio App.3d 173, 2009-Ohio-6146, ¶ 15. "Nevertheless, '[i]nasmuch as this court's review of an order granting summary judgment is de novo, * * * [we] will proceed to determine whether, despite the trial court's incorrect analysis, [PASCO] [was] entitled to summary judgment.'" *Id*., quoting *Tucker v. Kanzios*, 9th Dist. No. 08CA009429, 2009-Ohio-2788, ¶ 16. Pursuant to Civil Rule 56(C), summary judgment is appropriate if: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed

on a motion for summary judgment, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 293, quoting Civ.R. 56(E).

{¶10} An employer engages in an unlawful discriminatory practice when it terminates an employee, absent just cause, because of the employee's age. R.C. 4112.02(A).

> In the absence of direct evidence of discrimination, a plaintiff alleging age discrimination must establish a prima facie case using indirect evidence, by demonstrating (1) that he is a member of a protected class; (2) that he was qualified for the position in question; (3) that he suffered an adverse employment action despite his qualifications; and (4) that he was replaced by a person of substantially younger age. If the plaintiff successfully establishes a prima facie case of age discrimination, the employer must articulate a legitimate, nondiscriminatory justification for the employment action. The plaintiff may then prove by a preponderance of the evidence that the justification articulated by the employer is a pretext for discrimination. At all times, however, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff.

*Welch v. Norton City School Dist. Bd. of Educ.*, 9th Dist. No. 25144, 2010-Ohio-6131, ¶ 13 (Internal quotations, citations, and alterations omitted). "The cornerstone of this analysis is whether the employment action is the result of discrimination—not merely whether the action is unfair or the justification questionable." *Price v. Matco Tools*, 9th Dist. No. 23583, 2007-Ohio-5116, ¶ 31.

{¶11} "A workforce reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Carpenter v. Wellman Prods. Grp.*, 9th Dist. No. 03CA0032-M, 2003-Ohio-7169, ¶ 16, quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990). If a reduction in force is required by economic necessity, an "employee's burden in demonstrating discrimination is heavier[.]" *Id.* at ¶ 17. "When there is a

reduction in force, a prima facie case of age discrimination is not established unless the employee shows that he or she was actually replaced by a younger person." *Id*. "The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination." *Id*., quoting *Murphy v. East Akron Community House*, 56 Ohio App.3d 54, 57 (9th Dist.1989). "An employee in such reorganization cases must come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination in order to establish a prima facie case." *Murphy* at 57.

{¶12} Mr. Spitalieri testified that the California contract accounted for 80 to 90 percent of the company's revenues, and that 80 to 85 of the company's 100-105 employees were tied directly to that contract. He said that, as of the date of the deposition, February 16, 2012, the company was still unprofitable. In 2011, for example, it had lost approximately a million dollars. He also said that he had not drawn a salary in 2010 or 2011 after paying himself $150,000 in 2009. Regarding the number of PASCO employees, Mr. Spitalieri testified that, at the end of 2010, the company had 21 or 22 employees. As of the date of the deposition, it had reduced the number to between 15 and 17 employees.

{¶13} Mr. Weisfeld argues that there is a genuine issue of material fact as to whether his termination was pursuant to a reduction in force. According to him, because of the time gap between when PASCO terminated him and the other employees, reasonable minds could conclude that his termination was not part of the reduction in force.

{¶14} Contrary to Mr. Weisfeld's understanding, an employee is terminated pursuant to a reduction in force whenever "business considerations" are the driving force behind the company's decision. *Cassel v. Schuster Electronics Inc.*, 159 Ohio App.3d 224, 2004-Ohio-

6276, ¶ 18 (9th Dist.). It is immaterial that PASCO eliminated some positions immediately after losing the California contract and waited over a year to eliminate other positions. So long as the company's decision was because of business considerations and it did not replace Mr. Weisfeld with another employee, his discharge was pursuant to a reduction in force. *Id*. at ¶ 18, 22.

{¶15} Mr. Weisfeld has not directed this Court to any evidence that calls into question PASCO's alleged business reasons for eliminating its director of technology position. Accordingly, in light of the fact that Mr. Weisfeld's argument under this assignment of error focuses exclusively on the proximity between the company's loss of business and its decision to terminate his position, we conclude that he has failed to demonstrate that PASCO was not entitled to judgment on his age discrimination claim as a matter of law. Mr. Weisfeld's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY WEIGHING THE EVIDENCE IN DETERMING A QUESTION OF FACT THAT WEISFELD WAS NOT REPLACED BY JONATHAN WEBBER.

{¶16} In his second assignment of error, Mr. Weisfeld argues that there is a genuine issue of material fact with respect to whether the company replaced him with a younger individual. "An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Carpenter v. Wellman Prods. Grp.*, 9th Dist. No. 03CA0032-M, 2003-Ohio-7169, ¶ 16, quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). In fact, "[i]n a RIF, the terminated employee must show that he was replaced after his termination in order to establish a prima facie case of age discrimination." *Cassel*, 159 Ohio App.3d 224, 2004-Ohio-6276 at ¶ 22. "It has been said that a person is 'replaced' 'only when another employee is hired or reassigned to perform the plaintiff's duties.'" *Carpenter* at ¶

16, quoting *Barnes* at 1465. "[A]n employee 'is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.'" *Id.*, quoting *Barnes* at 1465. An employer, however, "cannot avoid age discrimination liability by attempting to disguise an illegal discharge as a reduction in force by making insignificant changes in the duties assigned to a particular position[.]" *Kirkendall v. Park Hannifin Corp.*, 9th Dist. No. 94CA005955, 1995 WL 422739, *4 (July 12, 1995).

{¶17} Mr. Weisfeld's replacement argument fails for two reasons. First, although Mr. Weisfeld contends that he was replaced by 29-year-old Jonathan Webber, he actually retained his director of technology position after Mr. Webber left the company. According to Mr. Weisfeld, it is the company's network coordinator who took over almost all of the duties that he had as director of technology. At the time of his discharge, however, the network coordinator position was being held by an individual who was 60 years old. Accordingly, even if PASCO created the network coordinator position to "replace" the director of technology position, Mr. Weisfeld failed to establish that "he was replaced by a person of substantially younger age." *Welch v. Norton City School Dist. Bd. of Educ.*, 9th Dist. No. 25144, 2010-Ohio-6131, ¶ 13.

{¶18} The other reason that Mr. Weisfeld's replacement argument fails is because he did not demonstrate that there is a genuine issue of material fact regarding whether the network coordinator position and the director of technology positions are substantially the same. According to Mr. Weisfeld, he trained Mr. Webber on the vast majority of Mr. Webber's duties and tasks. That, however, was because Mr. Webber's duties as network coordinator were a subset of Mr. Weisfeld's duties as director of technology. As Mr. Thangavelu explained at his deposition, as director of technology, Mr. Weisfeld was responsible for systems management,

computer operations, financial control, purchasing, vendor management, and had various other management responsibilities. As network coordinator, Mr. Webber was only responsible for computer operations and some systems management. According to Mr. Thangavelu, the company divided the rest of Mr. Weisfeld's duties among its other employees.

{¶19} Mr. Weisfeld has pointed to a statement in his affidavit in support of his argument that PASCO hired Mr. Webber to replace him. His conclusory statement that "PASCO hired [Mr.] Webber to serve as my replacement," however, does not create a genuine issue of material fact as to his age discrimination claim. *See Christian v. Duttry*, 9th Dist. No. 05CA008805, 2006-Ohio-4655, ¶ 16 (concluding that plaintiff's assertion that "other" safety measures were available did not create a genuine issue of material fact concerning whether the defendant's safety precautions fell below the standard of care); *Dunn v. Rossborough Mfg. Co.*, 9th Dist. No. 96CA006632, 1998 WL 208844 *5 (Apr. 29, 1998). Mr. Weisfeld also relied on statements in an affidavit by Mr. Webber, but Mr. Weisfeld did not submit Mr. Webber's affidavit with his memorandum in opposition to PASCO's motion for summary judgment and the trial court denied him leave to supplement his response. Mr. Webber's affidavit, therefore, is not properly before this Court.

{¶20} Upon review of the record, we conclude that Mr. Weisfeld has failed to establish that a genuine issue of material fact exists regarding whether he was replaced by another worker. The trial court, therefore, did not err when it determined that his discharge was pursuant to a reduction in force. Mr. Weisfeld's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT WEISFELD IS AN EXEMPT EMPLOYEE UNDER THE OHIO MINIMUM FAIR WAGE STANDARDS ACT.

{¶21} Mr. Weisfeld's third assignment of error is that the trial court incorrectly determined that PASCO presented clear and affirmative evidence that he was an exempt employee under Ohio's Minimum Fair Wage Standards Act. Under Revised Code Section 4111.03(A), "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek * * * subject to the exemptions of section 7 and section 13 of the 'Fair Labor Standards Act of 1938' * * *." One of the exemptions listed in those sections is for "any employee employed in a bona fide executive, administrative, or professional capacity * * *." 29 U.S.C. 213(A)(1). The trial court concluded that there was no genuine issue of material fact the exemption applied because Mr. Weisfeld was an administrative employee.

{¶22} "It is well settled that exemptions from the Fair Labor Standards Act are to be narrowly construed." *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295 (1959). According to the Code of Federal Regulations, the term "employee employed in a bona fide administrative capacity" means

> any employee: (1) [c]ompensated on a salary or fee basis at a rate of not less than $455 per week * * * (2) [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. 541.200(a).

> To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. 541.201(a).

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. 541.201(b).

{¶23} To qualify for the administrative exemption, an employee's primary duty must also "include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. 541.202(a). "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id*.

> The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. 541.202(b).

The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

29 C.F.R. 541.202(c). The Code of Federal Regulations also cautions that "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. 541.202(e).

{¶24} At his deposition, PASCO presented Mr. Weisfeld with an exhibit containing its job description for the director of technology position. According to the document, Mr. Weisfeld's responsibilities were

Preparing, reviewing, and monitoring all financial data, [f]ormulating and adhering to corporate policies, [d]eveloping subordinates, [p]roviding accurate and timely reporting, [s]upporting corporate values, [e]nsuring that manuals are current and procedures are being followed, [i]nterviewing, hiring, firing, disciplining, motivating, and other personnel matters, [p]roviding input on strategic direction, [d]eveloping and implementing business plans, [d]irecting the performance of multi-functional areas, [l]eading tactical teams, [and h]aving moderate purchasing authority.

Mr. Weisfeld agreed that the job description was "basically what I did there," although he explained that his duties changed some after the first six months. According to Mr. Weisfeld, although there were times that he managed other employees, there were also times when he was not managing anyone. There were a few manuals that he was in charge of and he did some interviewing, but he never hired or fired anyone. He said that he disciplined and motivated

employees and assisted with some of the company's business plans. He also led a few tactical teams. Although he created purchasing orders, he had to wait for final approval to process them. He also took care of the computer servers and other hardware issues and helped to create new software products for the company. He further testified that he was the type of employee who used independent judgment, although upper management had the final decision on everything that he did.

{¶25} Upon review of the record, it is clear that Mr. Weisfeld's primary duties were directly related to PASCO's general business operations. 29 C.F.R. 541.201(a). The work he performed consisted of purchasing, procurement, research, personnel management, and computer network, internet and database administration. 29 C.F.R. 541.201(b). There is also no genuine issue of material fact that Mr. Weisfeld's job included "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. 541.202(a). According to Mr. Weisfeld's own testimony, he used his independent judgment in performing his duties. The fact that he did not actually have final say on those issues does not mean that his job did not "include[ ] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. 541.200(a), 541.202(c).

{¶26} Mr. Weisfeld argues that a genuine issue of material fact exists with respect to whether he was an exempt employee because he averred that his primary job responsibilities were "being a PC technician, restoring back-ups, writing test plans and updating manuals" and those duties do not involve the policymaking aspects of a company. The Ohio Supreme Court has held that "[a]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." *Byrd v. Smith*, 110 Ohio St.3d 24,

2006-Ohio-3455, paragraph three of the syllabus. Mr. Weisfeld did not explain why the job description he gave in his affidavit was different than the description he agreed to at his deposition. We, therefore, conclude that the affidavit does not create a genuine issue of material fact.

{¶27} The trial court correctly determined that PASCO was entitled to judgment as a matter of law on Mr. Weisfeld's minimum-fair-wage-standards-act claim. Mr. Weisfeld's third assignment of error is overruled.

## III.

{¶28} The trial court correctly granted PASCO's motion for summary judgment. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶29} I respectfully dissent.

{¶30} Mr. Weisfeld expressly argued in his first and second assignments of error that the trial court erred by granting summary judgment in favor of PASCO, Inc., because the court weighed the evidence submitted by the parties. I agree. In the introductory paragraph of its judgment entry, the trial court asserted that it considered the facts of the case. Moreover, in its analysis, it reiterated that it considered the evidence presented and made findings of fact based on that evidence. In one instance, the trial court dismissed Mr. Weisfeld's evidence as not believable, but asserted in the alternative that if such evidence was true, it did not carry adequate weight to substantiate his argument. As I wrote separately in *Schaffer v. First Merit Bank, N.A.*, 186 Ohio App.3d 173, 2009-Ohio-6146, ¶ 34 (9th Dist.) (Carr, J., concurring in part and dissenting in part), it is improper for a trial court to weigh evidence and determine issues of fact when considering a motion for summary judgment. When the trial court has done so, it has essentially tried the matter, thereby rendering an award of summary judgment improper. *Id.* at ¶ 33.

{¶31} I disagree with the majority's analysis in this case as I would conclude that this situation is no different than cases in which this Court has declined to look in the first instance at issues that the trial court had not considered. *See, e.g., Harris-Coker v. Abraham*, 9th Dist. No. 26053, 2012-Ohio-4135; *MacKeigan v. Salvation Army*, 9th Dist. No. 11CA010058, 2012-Ohio-3635. I would reverse the trial court's judgment based on its improper weighing of the evidence, and remand the matter to the trial court for its proper consideration of the motion for summary judgment.

APPEARANCES:

BRIAN D. SPITZ and FRED M. BEAN, Attorneys at Law, for Appellant.

ROBERT B. CASARONA, and CHRISTINE M. GARRITANO, Attorneys at Law, for Appellee.