[Cite as *Horner v. Elyria*, 2015-Ohio-47.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| TERRY HORNER | C.A. No.     13CA010420 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF ELYRIA, et al. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellees | CASE No.     11 CV 170901 |

DECISION AND JOURNAL ENTRY

Dated: January 12, 2015

CARR, Judge.

{¶1}   Plaintiff-Appellant, Terry Horner, appeals from the judgment of the Lorain County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellees the City of Elyria ("the City"), Samuel Jacob, Rob Given, Christopher Eichenlaub, and Charles Skaggs (collectively, "Appellees").  This Court reverses and remands for further proceedings.

I.

{¶2}   In May 2009, the City posted a job opening for a Laborer II position in the maintenance department of its water pumping plant.  Horner bid on the position and began working in the plant in June 2009, alongside her husband.  For the first eight months of her employment, Horner cleaned the plant's buildings and occasionally performed some light landscaping.  Although Horner was aware that her job description included a variety of other tasks, she was never asked to perform any of those other tasks.  At the beginning of 2010, however, two events occurred.  First, the maintenance department underwent a staffing reduction

that reduced the number of its laborers from four to two. Second, Horner advised the superintendent of the plant that several of the other maintenance workers were receiving preferential treatment from her direct supervisor. After the two foregoing events occurred, Horner's job duties changed.

{¶3} On February 23, 2010, Horner's direct supervisor informed her that she would be training to clean the plant's basins.[1] Basin cleaning involved being part of the crew who hosed out the plant's underground basins. The basins were approximately 18-20 feet deep and accessible by way of a hatch at the top. Sediment from the slow water that flowed into the basins collected at their bottoms, so workers occasionally had to dislodge the sediment using a fire hose and move it into a trench at one end of the basins. Because the sediment could reach as high as 15 feet, however, workers had to be careful not to become engulfed by the sediment.

{¶4} Believing that her supervisor meant to send her down into the basins without any safety equipment, Horner contacted her union president and the Occupational Safety and Health Administration. From that point on, the relationship between Horner, her direct supervisor (Rob Givens), the plant superintendent (Samuel Jacob), at least one of her coworkers (Charles Skaggs), and the City's Safety Service Director (Christopher Eichenlaub) suffered. It was Horner's position that, from the point of February 23rd on, her supervisors and fellow employees purposely sought to place her in harm's way as an act of retaliation for her having reported her direct supervisor's preferential treatment of other employees. Horner described multiple instances where she was either told she would be going down into the basins without equipment or placed on another potentially dangerous job without either the proper training or equipment.

---

[1] The task of cleaning the basins was one that was included in Horner's job description.

Meanwhile, it was the City's position that staffing reductions required it to rely on Horner for a larger variety of functions and that safety equipment was available to her at all times.

{¶5} The week after Horner was told she would need to start cleaning basins, she attempted suicide and was briefly admitted to a local hospital. Horner was then placed on FMLA leave and did not return to her position until July 6, 2010. Even after her return, however, problems arose because Horner still believed that her supervisors meant to assign her to various tasks without the proper training or safety equipment. Horner underwent a five-day suspension for insubordination in mid-July and stopped coming to work in August. The City later terminated her as a result of her absence.

{¶6} In February 2011, Horner filed a multi-count complaint against Appellees for retaliation under both statutory and common law theories, intentional infliction of emotional distress, constructive discharge, and civil conspiracy. After Appellees answered, discovery commenced and resulted in almost 800 pages of deposition transcript and a wealth of exhibits. Appellees ultimately sought summary judgment on all of Horner's claims, and the trial court granted their motion.

{¶7} Horner now appeals from the trial court's judgment and raises one assignment of error for our review.

II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN ITS APRIL 18, 2013, JUDGMENT ENTRY AND OPINION GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING THE PLAINTIFF'S COMPLAINT, AS THERE EXISTED GENUINE ISSUES OF MATERIAL FACTS AND APPELLEES WERE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

{¶8} In her sole assignment of error, Horner argues that the court erred by granting Appellees' motion for summary judgment. She argues that the court failed to view the evidence in a light most favorable to her, as the non-moving party, and improperly resolved conflicts in the evidence. She further challenges the court's decision on the merits. Because we agree that the court misapplied the summary judgment standard in granting Appellees' motion, we reverse and remand the court's judgment strictly on that basis.

{¶9} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8. Yet, "[c]ompliance with the terms of Civ.R. 56(C) is of fundamental importance at the trial court level, where the initial examination of the evidence occurs, and where the issues framing the litigation are shaped." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992). While an appellate court applies the same standard as the trial court, it "has a different focus than the trial court." *Id.* Civ.R. 56 "mandates that the trial court make the initial determination whether to award summary judgment; the trial court's function cannot be replaced by an 'independent' review of an appellate court." *Id.*

{¶10} In ruling on a motion for summary judgment, a trial court may not weigh the evidence and determine issues of fact. *See Tucker v. Kanzios*, 9th Dist. Lorain No. 08CA009429, 2009-Ohio-2788, ¶ 16. *See also Turner v. Turner*, 67 Ohio St.3d 337, 341-342 (1993) (court may not resolve questions of credibility on summary judgment).

> The proceeding on a motion for summary judgment is not a trial, but is for the purpose of determining whether there is a general issue to be tried. Summary judgment is not available in a proceeding which requires the trial court to make an independent judicial examination and determine conflicting issues of fact and law.

*Heatwall v. Boston Hts.*, 68 Ohio App.3d 96, 98 (9th Dist.1990). It is appropriate "only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10. "At the summary judgment stage, all evidence must be construed and all reasonable inferences must be drawn in favor of the non-moving party." *Baker v. Bob Evans Farms, Inc.*, 9th Dist. Wayne No. 13CA0023, 2014-Ohio-2850, ¶ 21.

{¶11} This Court finds troubling the trial court's judgment entry in this matter. The court's entry contains ten pages of "undisputed" facts. As Horner points out in her brief, however, the court appears to have discounted some of the evidence that she presented in describing the facts as "undisputed." Moreover, the trial court repeatedly referenced Horner not having produced "sufficient evidence" so as to withstand Appellees' motion for summary judgment. It is unclear to this Court what the trial court meant by "sufficient evidence." If Horner produced *any* Civ.R. 56(C) evidence to show the existence of a genuine issue of material fact for trial, then Appellees were not entitled to summary judgment. *See Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Thus, in the face of conflicting, material evidence, it was not the trial court's role to resolve such conflicts in ruling on Appellees' motion for summary judgment. *See Tucker*, 2009-Ohio-2788, at ¶ 16.

{¶12} In certain instances, this Court has treated a trial court's misapplication of the summary judgment standard as harmless error. *See, e.g., Weisfeld v. PASCO, Inc.*, 9th Dist. Summit No. 26416, 2013-Ohio-1528, ¶ 9. We cannot, however, designate the court's error in this case as harmless. This case is extremely fact-intensive and involves multiple claims with multiple subparts. As set forth above, the discovery in which the parties engaged resulted in

almost 800 pages of deposition transcript and a wealth of exhibits. Although the trial court issued a lengthy and detailed opinion, it appears that the very foundation of its opinion was improper, as the court did not apply the correct summary judgment standard. For example, the court repeatedly referred to whether Horner produced "sufficient" evidence rather than determining whether the City had met its initial *Dresher* burden. It is also unclear whether the court actually considered all of the evidence that Horner presented in setting forth the facts underlying this matter. For example, the trial court appears to have ignored portions of Horner's deposition where she testified that Jacobs ordered her to get into the basin and that she could not use the safety equipment, instead relying upon Jacobs' version of events (i.e., that he had no intention of sending her into the basin).

{¶13} Were this Court to apply the correct summary judgment standard, this Court would essentially be sitting as the trial court rather than the reviewing court. Based on the facts and circumstances of this case, it would be improper for us to do so. *See Murphy* at 360. Because the trial court failed to apply the proper summary judgment standard in the first instance, Horner's assignment of error is sustained on that basis, and the matter is remanded for further proceedings.

### III.

{¶14} Horner's sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
CONCURS.

WHITMORE, J.
DISSENTING.

{¶15} I respectfully dissent. After performing a de novo review of the evidence and applying the correct summary judgment standard, I believe summary judgment was appropriate. *See Weisfeld v. PASCO*, Inc., 9th Dist. Summit No. 26416, 2013-Ohio-1528, ¶ 9-15 (conducting a de novo review of whether summary judgment was appropriate despite the trial court's incorrect analysis). Therefore, I would conclude that any error in the court's analysis or misapplication of the law is harmless.

APPEARANCES:

KENNETH R. RESAR, Attorney at Law, for Appellant.

MARIBETH DEAVERS, Attorney at Law, for Appellee.